## NEW YORK LIFE INSURANCE COMPANY *v.* FLETCHER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Argued March 19, 1886.—Decided March 29, 1886.

A person applied in St. Louis to an agent of a New York Insurance Company, for insurance on his life. The agent, under general instructions, questioned him on subjects material to the risk. He made answers which, if correctly written down, and transmitted to the company, would have probably caused it to decline the risk. The agent, without the knowledge of the applicant, wrote down false answers, concealing the truth, which were signed by the applicant without reading, and by the agent transmitted to the company, and the company thereupon assumed the risk. It was conditioned in the policy that the answers were part of it, and that no statement to the agent not thus transmitted should be binding on his principal; and a copy of the answers with these conditions conspicuously printed upon it, accompanied the policy. *Held:* That the policy was void.

*Insurance Co.* v. *Wilkinson*, 13 Wall. 222, and *Insurance Co.* v. *Mahone*, 21 Wall. 152, distinguished.

If an applicant for life insurance is required to answer questions relating to material facts in writing, and to subscribe his name thereto as part of the application upon which the policy is issued, it is his duty to read the answers before signing them, and it will be presumed that he did read them.

If a policy for life insurance on which premiums have been paid is void by reason of untrue representations as to material facts in the application, made without design on the part of the applicant, the only recovery which can be had on the policy after the assured's death is for the premiums paid on it.

The New York Life Insurance Company, on the 22d of December, 1877, issued at its home office in the city of New York to Chinonda S. Alford a policy of insurance upon his life for the sum of $10,000. The consideration was $263.80 paid at the time, and the promise to pay a like sum on the 22d of December each year. The company is a corporation under the laws of New York, but it also transacts business in Missouri through agents residing there, and, of course, with reference to the business done in that State, is subject to its laws. The assured was a resident of Missouri, and in December, 1877, he applied to an agent of the company there for

such a policy, and submitted to an examination. He also made certain statements and representations respecting himself, his life, and his past and present health, to which he appended a declaration, warranting their truthfulness and agreeing that they should be the basis of any contract between him and the company, and that if they, or any of them, were in any respect untrue, the policy which might be issued thereon should be void, and that all moneys paid on account of the insurance should be forfeited; and further agreeing, that, inasmuch as only the officers at the home office had authority to determine whether or not a policy should issue on any application, and as they acted only on the written statements and representations referred to, no statements or representations made or information given to the persons soliciting or taking the application for the policy, should be binding on the company or in any manner affect its rights, unless they were reduced to writing and presented at the home office in the application. The statements and representations with this declaration accompanying the application and forming a part of it, were forwarded to the home office. The policy was thereupon issued and sent to its agent at St. Louis for delivery to the assured. It recited that it was issued in consideration and upon the faith of the statements and representations contained in his application; all of which had been warranted by him to be true, and also in consideration of the cash payment and the annual premiums to be paid. It stipulated for the payment of the amount of the insurance within sixty days after due notice and satisfactory proof of his death, subject to the conditions specified therein. To the policy was annexed a copy of the application, and upon it was endorsed the following notice in red type and conspicuously printed:

"For the information of the assured, and in order that any unintentional errors or omissions which hereafter may be found to exist may be corrected, an abstract of the application upon which this policy is based may be found in the third page within. If corrections are desired, when satisfactory to the company, a certificate to that effect will be issued over the signature of the president and actuary."

The cash payment was made by the assured on the receipt of the policy, and the subsequent annual premiums were regularly paid to the agents of the company in Missouri until his death, which occurred September 24, 1880. The plaintiff was appointed his executor. Due notice and proof of his death were given to the company. Among the documents furnished was the affidavit of a witness, who testified that he had been the physician of the assured for ten years, and had attended him at one time for diabetes, and that he died of that disease. Payment of the insurance money was refused on the alleged ground of false statements and representations in the application. Thereupon the executor brought this action in a court of Missouri, and upon the petition of the company it was removed to the Circuit Court of the United States.

The petition, which is the designation given to the first pleading in an action under the system of procedure in Missouri, alleges the incorporation of the defendant under the laws of New York, and its license to do business in Missouri; the issue of the policy; the payment of the premiums; the death of the assured; the appointment of the plaintiff as executor; the giving of notice and furnishing of proof of the death, and the non-payment of the insurance money; and prays for judgment for the amount with interest. The company answered, admitting its incorporation under the laws of New York, and the issue of the policy, but set up that it was executed at the home office upon the faith of the answers and statements contained in the assured's written application, which were warranted to be true; that it was stated in the application that he never had a disease of the kidneys or any serious disease, and had never been seriously ill, and had no regular medical attendant, whereas he had been afflicted with diabetes, which is a serious disease of the kidneys, and had been under medical treatment for it; that such statement was not only false but was material to the risk; that he actually died of the disease which he thus concealed; and that the policy was void by reason of these false statements.

The plaintiff replied that two agents of the company at St. Louis, who were personally acquainted with the assured and

knew his past and then physical condition, had solicited him on different occasions to take out a policy in the company; that he told each of them on those occasions that he did not believe he was insurable; that they knew he had been in bad health and had been under medical treatment for diabetes, though he thought he was then well; that they assured him that he was insurable, that the fact that he had had the disease made no difference, and that if he would take out a policy and pay the premiums required he would have no trouble; that finally, about the 18th of December, 1877, he consented to take a policy; that they then told him it would be necessary for him to answer certain questions as a matter of form; that one of them thereupon read to him certain questions from a printed blank, and as he answered them the other pretended to take down and write in the blank the substance of the answers as given, not reading over to the assured what he had written, nor consulting him about it, nor informing him what it was, but saying that what he did was a mere formality; that when he was asked with respect to his having had any disease of the kidneys he replied that his condition was well known to the agents, who were aware that he had been sick and under treatment by Doctor Brokaw for diabetes, and that the doctor's office was opposite, and they could go there and find out everything they wanted to know; that the assured had faithfully answered all the questions, but the agents inserted in the blanks false answers; that he had no reason to suppose that the answers were taken down differently from those given; that after answering all their questions he was asked to sign his name to the paper to identify him as the party for whose benefit the policy was to be issued, and for that purpose he signed the paper twice, without reading it or the written answers; that the agents did not read to him any part of the application except the questions, and did not read the clause set forth in the defendant's answer, nor call attention to the fact that his signatures were intended as an acceptance or assent to that clause; that when the policy was delivered to him he neither read it nor the copy of the application attached to it; that the agent who delivered it informed him that it was

all right, and he was insured, and he gave no further attention to the matter; that the annual premiums, as they fell due, were paid to said agent, who received them with full knowledge of all the facts; and that, therefore, the company was estopped from pretending that any of the answers as written rendered the policy void.

The company demurred to this reply, as constituting in law no cause of action and no reply to the facts set forth in the answer, but the demurrer was overruled.

On the trial it was proved by the company that the assured was a resident of St. Louis; and that Dr. Brokaw had been his regular physician for ten years, and had treated him some years before his death for diabetes, of which disease he died.

It was also proved that on the day he made application to the defendant he also applied to the Penn Mutual Life Insurance Company, of Pennsylvania, for insurance on his life, and stated that he had had diabetes in 1875, and that Dr. Brokaw was his physician. That company refused to issue a life policy, but granted a fifteen-year endowment policy at a largely increased premium.

It was also proved that diabetes is commonly known as a disease of the kidneys, though primarily a disease of nutrition and not necessarily affecting their structure in its early stages; that it is a very serious disease and of doubtful curability; that the policy was issued solely upon the written application; and that no other application, statement, or representation was received from the applicant.

The law of Missouri provides that " no misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury;" Rev. Stat., Missouri, 1879, § 5976; and that in suits brought upon life policies " no defence based upon misrepresentation in obtaining or securing the same shall be valid, unless the defendant shall, at or before the trial, deposit in court, for the bene-

fit of the plaintiffs, the premiums received on such policies."
Id. § 5977.

Under this last section the defendant tendered in court to
the plaintiff $888.26, the premiums received, with interest to
the date of trial; but the plaintiff declined to receive the
amount in full payment.

On the part of the plaintiff a witness was allowed, against
the objection of the defendant, to testify to statements, made
by the assured and the agent at the time of the application,
tending to establish some of the matters alleged in reply to
the answer. He could not give the specific words used, but
he remembered that in one part of the conversation Alford
stood up, at the time he was asked as to his having had kidney
disease, and pointed through the window and said: "My medi-
cal examiner has an office across the way; you can go there
and find out from him. I have been afflicted in the kidneys,
but he says I am well, and I feel well now." He also testified
that at one time he heard the assured say to the agent: "Your
company ought not to insure me; you know I have been
afflicted with kidney disease;" and that the agent replied:
"Just give me your application and I will see if I can get it
through."

The witness was also permitted to testify that he did not
think the paper was read over to the assured. He did not
hear it read, nor did he remember the questions asked, except
the specific one as to the kidneys, and he remembered that
because the assured stood up and pointed across the street.

There was no evidence that the application was not read by
the assured before he signed it, or that there was any imposi-
tion practised upon him, or that after receiving the policy he
applied to correct his answers, which, as written down, are con-
ceded to be false.

Upon the conclusion of the testimony, the defendant re-
quested the court to charge the jury, among other things, sub-
stantially as follows.

1. That it is competent for any party, corporation, or indi-
vidual, employing an agent in the negotiation of a contract,
whether of insurance or otherwise, to limit his powers, pro-

vided the limitation is brought home to the knowledge of the other contracting party, otherwise the principal will be bound by the apparent as well as the actual powers of the agent ; and as, in this case, the limitation was made a part of the contract between the parties, it was binding upon them.

2. That the stipulation between the parties, limiting the powers of the soliciting agent and providing that the contract should be based upon the written application, was binding upon the parties, and it was, therefore, immaterial what may have been said by or to the agent at the time of making the application, which was not reduced to writing and presented to the officers of the company at the home office in New York.

3. That whether the statements and answers contained in the application of the assured were made by him or not, yet when he afterwards received the policy, with a copy of the application attached and a memorandum endorsed thereon, calling his attention to the copy thus attached, with a request that any errors in the application be reported to the company for correction, it was his duty to report any answers incorrectly written down and thus enable the company to correct them; and that by his failure to do so he must be presumed to have accepted the policy upon the faith of the answers, and to have acquiesced and agreed that it should remain as the basis of the contract of insurance. But the court refused to give any of these instructions, and the defendant excepted. It recognized, however, in its charge, the competency of the company to limit the powers of the agent, and the binding force of the limitation if brought home to the other contracting party, and instructed the jury that there was such limitation in the present case ; that the company was not bound by any representations to or by the assured, unless they were put in writing and submitted to the company ; that, therefore, what was contained in the application must be regarded as constituting the basis of the contract, unless it could be avoided for fraud ; that if the jury found that at the time of making the application he told the agent that he had had diabetes and referred him to his physician concerning it, and that such agent committed a fraud upon the assured by inserting false answers in the application

and by suppressing the answers actually given, and by concealing from the assured what he had written in the application, and thereby induced him to sign it without knowing what it contained, then the plaintiff was not estopped to recover. The court also charged that if the assured ascertained before the contract was consummated, that is, before the policy was delivered to him and the first premium paid, that the agent had committed a fraud upon him and upon the company, it was his duty to stop and decline to go any further with the transaction; but if he did not discover this before the policy was delivered and the first premium paid, he was not called upon afterwards to take any steps for the cancellation of the contract. To this the defendant excepted. The plaintiff obtained a verdict for the full amount of the insurance money with interest, upon which judgment was rendered.

*Mr. Frederick N. Judson,* with whom was *Mr. John H. Overall,* for plaintiff in error.

*Mr. George D. Reynolds* for defendant in error.

I. The contract of insurance in this case is a Missouri contract and to be determined by the laws of that State. (*a.*) The cause of action undoubtedly accrued in Missouri, where the death occurred. *Rippstein* v. *St. Louis Mutual Life Insurance Co.,* 57 Missouri, 86. (*b.*) As the New York Life Insurance Company could only do business in Missouri on terms prescribed by the laws of Missouri, *Paul* v. *State of Virginia,* 8 Wall. 168, when it issued policies or did business in that State, it subjected itself to the laws thereof, and its contracts of insurance, made under the license granted by the State to do business therein, are to be interpreted according to the laws of Missouri. Its policies, solicited by its agents in Missouri, are entered into and accepted by the citizens of Missouri, with a view to the local law, and are to be interpreted thereunder. *Pritchard* v. *Norton,* 106 U. S. 124; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Taylor* v. *Holmes,* 14 Fed. Rep. 505. So held uniformly by United States courts in Missouri since the passage of the act of March 23, 1874, Rev. Stat. Missouri, 1879,

§§ 5976, 5977. *White* v. *Connecticut Mutual Life Insurance Co.*, 4 Dillon, 177; *Fletcher* v. *New York Life Insurance Co.*, 13 Fed. Rep. 526. See also *Holmes* v. *Charter Oak Life Insurance Co.*, 131 Mass. 64. It follows that §§ 5976, 5977 Rev. Stat. Missouri apply to this contract, and under them it is to be noted: (1) that the doctrine of warranty as understood in insurance contracts, is done away with, and misrepresentation is not to be deemed material, unless the matter misrepresented actually contributed to the loss, which is to be determined by the jury, see § 5976; nor 2d, shall such defence be available, unless the defendant at or before the trial, tenders or returns the premiums received. See § 5977. See *White* v. *Conn. Mut. Life Ins. Co. supra.*

II. The main question presented by the case is, whether the clause in the application and in the policy, to the effect that no statements, representations or information made or given by or to the person soliciting or taking the application, or to any person, shall be binding on the company, or in any manner affect its rights, unless such statements, etc., be reduced to writing and presented to the officers of the company at the home office, in the application referred to, is such a notice to the applicant, or to the insured, of the limitation of the powers of the soliciting agent, as exempts the company from responsibility and liability on the policy, when the solicitor is proved to have fraudulently inserted wrong answers and concealed the fact that he had done so from the applicant. As to this, it is respectfully submitted, that this clause is nothing more than an attempt to make the solicitor the agent of the applicant, instead of the agent of the insurer, and that it falls within the principle of the cases of *Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *Ins. Co.* v. *Mahone*, 21 Wall. 152; *New Jersey Mutual Life Ins. Co.* v. *Baker*, 94 U. S. 610. See also note to *Carpenter* v. *Washington Insurance Co.*, 2 American Lead. Cas., 5th ed., 919; Bliss on Life Ins., 2d ed., §§ 76–81; May on Insurance, 2d ed., §§ 136–144, 497–499.

III. Roselein continued, as agent of the company to receive premiums, knowing the statements in the application to be false. That estops his principal. *Wing* v. *Hawey*, 27 Eng.

Law & Eq., 140; *Ins. Co.* v. *McCain*, 96 U. S. 84; *Commercial Ins. Co.* v. *Ives*, 56 Ill. 402; *Ætna Ins. Co.* v. *McGuire*, 51 Ill. 342.

IV. Counsel for plaintiff contend that because the effect of false statements in the application is avoided, and a recovery had notwithstanding their insertion, therefore the recovery must be on a new and different contract. That this is not so, see *Ins. Co.* v. *Wilkinson*, 13 Wall, 222, and especially the brief of counsel, 226–229.

*Mr. Reynolds* then pointed out the distinctions between the *Mahone case supra, Ryan* v. *World Mut. Life Ins. Co.*, 41 Conn. 168, and *Loehner* v. *Home Mutual Ins. Co.*, 17 Missouri, 247, and contended that the latter case was no longer law in Missouri, citing *Horwitz* v. *Equity Mutual Ins. Co.*, 40 Missouri, 557; *Franklin* v. *Atlantic Fire Ins. Co.*, 42 Missouri, 456; *Combs* v. *Hannibal Savings & Ins. Co.*, 43 Missouri, 148; *Hayward* v. *National Ins. Co.*, 52 Missouri, 181.

MR. JUSTICE FIELD, after stating the case as above reported, delivered the opinion of the court.

It is conceded that the statements and representations contained in the answers, as written, of the assured to the questions propounded to him in his application, respecting his past and present health, were material to the risk to be assumed by the company, and that the insurance was made upon the faith of them, and upon his agreement accompanying them that, if they were false in any respect, the policy to be issued upon them should be void. It is sought to meet and overcome the force of this conceded fact by proof that he never made the statements and representations to which his name is signed; that he truthfully answered those questions; that false answers written by an agent of the company were inserted in place of those actually given, and were forwarded with the application to the home office; and it is contended that, such proof being made, the plaintiff is not estopped from recovering. But on the assumption that the fact as to the answers was as stated, and that no further obligation rested upon the assured in connection with the policy, it is not easy to perceive how the com-

pany can be precluded from setting up their falsity, or how any rights upon the policy ever accrued to him. It is, of course, not necessary to argue that the agent had no authority from the company to falsify the answers, or that the assured could acquire no right by virtue of his falsified answers. Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false representations in order to secure a valuable contract which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon and induced to enter into the contract. In such a case, assuming that both parties acted in good faith, justice would require that the contract be cancelled and the premiums returned. As the present action is not for such a cancellation, the only recovery which the plaintiff could properly have upon the facts he asserts, taken in connection with the limitation upon the powers of the agent, is for the amount of the premiums paid, and to that only would he be entitled by virtue of the statute of Missouri.

But the case as presented by the record is by no means as favorable to him as we have assumed. It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty in all business transactions, if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his

application, he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed.

In *Globe Insurance Co.* v. *Wolf*, 95 U. S. 329, the policy declared that the agents of the company were not authorized to waive forfeitures, and this court held that effect must be given to the provision, except so far as the subsequent acts of the company permitted it to be disregarded.

In *Insurance Co.* v. *Norton*, 96 U. S. 240, the policy contained an express declaration that the agents of the company were not authorized to make, alter, or abrogate contracts, or waive forfeitures, and this court held that the company could have insisted upon those terms had it so chosen.

In *Loehner* v. *Home Mutual Insurance Co.*, the Supreme Court of Missouri passed upon this point. 17 Missouri, 247, 256. The charter of that company provided that, if the assured failed to state in his application, which was made a part of the policy, any encumbrance that existed on the insured premises, his policy should be void. There was also endorsed on the policy a memorandum that the company would not be bound by any statement of the agent unless contained in the application. The answer to the action on the policy set up that the application did not truly state the encumbrances. A small encumbrance upon the premises was not stated, and on the trial evidence was offered that its existence was made known to the agent of the company at the time of the application, but that he refused to write it down, saying that the amount was too trifling. The evidence was excluded, and the Supreme Court sustained the ruling, holding that the objection that the encumbrance was not stated could not be obviated in that way. " Independently of the statute of the State," said the court, " which required the encumbrance to be expressed in

the policy at the peril of its being void, there was a memorandum endorsed on it which made known that the company would be bound by no statement made to the agent not contained in the application. The facts being as represented, they could not give the plaintiffs a right of action on the policy in the teeth of the statute and against the terms of the contract. If the conduct of the agent was such as is alleged, he was guilty of a gross fraud, as is shown by his setting up this defence, which would avoid the policy and give a right of action for the recovery of the premium, but could not, for the reason given, entitle the plaintiff to an action on the policy."

The present case is very different from *Insurance Co.* v. *Wilkinson*, 13 Wall. 222, and from *Insurance Co.* v. *Mahone*, 21 Wall. 152. In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured. Reference was made to the interested and officious zeal of insurance agents to procure contracts, and to the fact that parties who were induced to take out policies rarely knew anything concerning the company or its officers, but relied upon the agent who had persuaded them to effect insurance, " as the full and complete representative of the company in all that is said or done in making the contract," and the court held that the powers of the agent are *primâ facie* coextensive with the business entrusted to his care, and would not be narrowed by limitations not communicated to the person with whom he dealt. Where such agents, not limited in their authority, undertake to prepare applications and take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk,-though nominally proceeding from the assured, should be regarded as the act of the company. Nothing in these views has any bearing upon the present case. Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which, as we have stated, he must be presumed to have read. He is, therefore, bound by its statements.

The case of *Ryan* v. *World Mutual Life Ins. Co.*, 41 Conn. 168, is in some respects similar to the one before us. There a

policy obtained on the life of Patrick Ryan for the benefit of his wife declared that it was issued and accepted on the condition and agreement that the statements and declarations made in the application therefor, and on the faith of which it was issued, were in all respects true. The application was a part of the policy. It appeared that when the application was made, he was asked whether he had had any of the following diseases: bronchitis, consumption, spitting of blood, or any serious disease, and the answer, as written, was that he had had "none of them." To the enquiry whether, during the previous seven years, he had had any severe sickness or disease, or had employed or consulted any physician, the answer as written was "no." The authority of the agent was limited to receiving the application, forwarding it to the home office, receiving, countersigning, and delivering the policy, and collecting the premiums. The insured having died, action upon the policy was brought by his widow. On the trial she offered to prove, not that the answers were true, but that different answers were in fact given, both by her and him, and that the answers were wrongly written by the local agent of the company without the knowledge or consent of herself or her husband. The application was signed without being read. It was held that the company was not bound by the policy; that the power of the agent would not be extended to an act done by him in fraud of the company and for the benefit of the insured, especially where it was in the power of the assured by reasonable diligence, to defeat the fraudulent intent; that the signing of the application without reading it or hearing it read, was inexcusable negligence; and that a party is bound to know what he signs. After observing that the courts of the State had construed the powers of an insurance agent liberally, and held that, in writing the application and explaining interrogatories and the meaning of the terms used, he was to be regarded as the agent of the company, and, referring to the case of *Insurance Company* v. *Wilkinson*, in 13th Wallace, the court said: "But it cannot be supposed that these defendants intended to clothe this agent with authority to perpetrate a fraud upon themselves. That he deliberately intended to defraud them is

manifest. He well knew that if correct answers were given no policy would issue. Prompted by some motive he sought to obtain a policy by means of false answers. His duty required him not only to write the answers truly as given by the applicant, but also to communicate to his principal any other fact material to the risk which might come to his knowledge from any other source. His conduct in this case was a gross violation of duty, in fraud of his principal, and in the interest of the other party. To hold the principal responsible for his acts, and assist in the consummation of the fraud, would be monstrous injustice. When an agent is apparently acting for his principal, but is really acting for himself or third persons, and against his principal, there is no agency in respect to that transaction, at least as between the agent himself, or the person for whom he is really acting, and the principal. . . . The fraud could not be perpetrated by the agent alone. The aid of the plaintiff or the insured, either as an accomplice or as an instrument, was essential. If she was an accomplice, then she participated in the fraud, and the case falls within the principle of *Lewis* v. *The Phœnix Mutual Life Ins. Co.*, 39 Conn. 100. If she was an instrument she was so because of her own negligence, and that is equally a bar to her right to recover. She says that she and her husband signed the application without reading it and without its being read to them. That of itself was inexcusable negligence. The application contained her agreements and representations in an important contract. When she signed it she was bound to know what she signed. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. It is for his interest to do so, and the insurer has the right to presume that he will do it. He has it in his power to prevent this species of fraud and the insurer has not." 41 Conn. 171, 172. With these views we fully agree.

The instruction given to the jury in the case before us is, in effect, that the assured was bound by his application if it was not avoided for fraud, and that it was so avoided by reason of the false statements contained in it, and that, therefore, the

plaintiff, as his representative, could recover. But if the application was avoided, it would seem to be a necessary consequence that the policy itself was also avoided, and his right limited to recovering the premiums paid. But such was not the conclusion of the court. It directed the jury that if the application was avoided for fraud, he could recover. It does not seem to have occurred to the court that had the answers been truthfully reported, and the fact of the assured having had diabetes within a recent period been thus disclosed, the insurance would in all probability have been refused. If the policy can stand with the application avoided, it must stand upon parol statements not communicated to the company. This, of course, cannot be seriously maintained in the face of its notice that only statements in writing forwarded to its officers would be considered. A curious result is the outcome of the instruction. If the agents committed no fraud the plaintiff cannot recover, for the answers reported are not true; but if they did commit the imputed fraud he may recover, although, upon the answers actually given, if truly reported, no policy would have issued. Such anomalous conclusions cannot be maintained.

There is another view of this case equally fatal to a recovery. Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application, annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated, not only upon himself but upon the company, and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements. The consequences of that approval cannot after his death be avoided.

The court charged the jury that if the assured had discovered the fraud before the policy was delivered and the first premium paid, it would have been his duty to decline to go any further with the transaction; but if he did not discover the fraud until after such delivery and payment, he was not called upon to take any steps for the cancellation of the con-

tract. In other words, the jury were told that the assured might take to himself the benefit of the fraud without responsibility for it, if he did not discover it until after it was consummated—a doctrine without authority and wholly indefensible. No one can claim the benefit of an executory contract fraudulently obtained, after the discovery of the fraud, without approving and sanctioning it.

In *American Ins. Co.* v. *Neiberger*, 74 Missouri, 167, the assured agreed with the agent of the company that the policy to be issued should contain a clause giving him a right to cancel it at the end of the year. The policy issued contained no such clause; but he retained it several months before he returned it. The court, after observing that when the application does not attempt to set forth all the provisions which the policy to be issued must contain, and the agent represents that the policy will contain certain stipulations which are not unlawful, then the policy must contain them, or the assured would not be bound to accept it. "But in such case," said the court, "it will be the duty of the insured, when he receives the policy, promptly to examine the same, and, if it does not contain the stipulations agreed upon, to at once notify the company of such fact, and of his refusal to accept said policy. The policy in this case was issued on the 25th day of January, 1875, and was not rejected by the defendant until May 10, 1875. If the policy was received by the defendant soon after the date on which it purports to have been issued, we think he waited too long to elect whether he would receive the policy without the stipulation in regard to cancellation, or refuse to accept it, because it did not contain such stipulation. After such delay he will be deemed to have accepted the policy as issued."

The case of *Richardson* v. *Maine Ins. Co.*, 46 Maine, 394, is a stronger one in illustration of this doctrine of acceptance. There an application for insurance was made to an agent of the company. He thereupon filled one containing a statement that there was no mortgage on the property to be insured, and without the knowledge of the applicant signed his name thereto. A policy was accordingly issued, which declared that it was made and accepted in reference to the appli-

cation, and that the assured, by accepting it, covenanted that the application contained a just, full, and true statement of all the facts and circumstances in regard to the condition, situation, value, and risk of the property insured, and that if any fact or circumstance were not fairly represented, the policy should be void. Action having been brought upon the policy, the company denied its liability on the ground that the application had represented that there was no such mortgage, when in fact, one existed. The court held that the assured, by accepting the policy, was bound by its covenants, and that he ratified the application.

It is unnecessary to pursue the subject further. We are clear that the court below erred, both in refusing the instructions asked and in its charge to the jury in the particulars mentioned.

*Its judgment must, therefore, be reversed, and the cause remanded for a new trial.*