MARY FROEHLY *et al.*, Respondents, v. NORTH ST.
LOUIS MUTUAL FIRE INSURANCE
COMPANY, Appellant.

### St. Louis Court of Appeals, November 13, 1888

1.  **Mutual Insurance Company : CHARTER POWERS.** A mutual
    insurance company created by public laws is powerless to make
    any contract not expressly, or by necessary implication, author-
    ized by its charter.

2.  **Mutual Insurance Company : VALIDITY OF POLICY.** Where the
    charter of a mutual insurance company permits only the insurance
    of its members, and its members are those only who are insured
    according to the terms prescribed in the charter ; and where the char-
    ter requires that the application shall represent in fairness and good
    faith all material circumstances affecting the risk, and provides for
    a lien on the interest of the policy-holder in the insured property,
    to secure assessments ; and where a husband takes a policy in his
    own name, as fee-simple owner, on buildings situated on the
    separate real estate of his wife, such policy is void in its inception,
    as *ultra vires* of the corporation.

3.  **Insurance : VOID POLICY.** A policy, void in its inception by rea-
    son of the holder's failure of interest in the property in accordance
    with his representations made in the application, cannot be vali-
    dated by an assignment to the person holding the interest falsely
    assumed by the original holder. Such an assignment, though
    made with the consent of the insurer, cannot create a new contract
    of insurance.

4.  **Insurance Policy : ASSIGNMENT.** An indorsement on a policy,
    made subsequently to its issue, making the loss, if any, payable to
    a third person, is not an assignment of the policy.

5.  **Mutual Insurance Company : WAIVER.** The officers of a
    mutual insurance company cannot waive an essential condition of
    insurance.

*Appeal from the St. Louis City Circuit Court* —HON.
SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Kehr & Tittmann*, for the appellant.

The charter provides that the policy shall be void unless the assured states his true title in the application. Joseph Froehly insured the property as his, whereas it was not his, and in his application, which is part of the policy, stated his title to be in fee-simple, whereas he had no title in fee-simple or otherwise to the property insured. The policy, therefore, was void from its inception, and the risk never attached. *Loehner v. Ins. Co.*, 17 Mo. 247; *Koontz v. Ins. Co.*, 42 Mo. 126; *Mers v. Ins. Co.*, 68 Mo. 127, 131; *Ins. Co. v. Barnett*, 73 Mo. 364, 367; *Milling Co. v. Ins. Co.*, 25 Mo. App. 259, 264; *Roberts v. Ins. Co.*, 26 Mo. App. 92, 98; *Ins. Co. v. Montague*, 38 Mich. 548. It is settled law that a policy void in its inception is not vitalized and rendered valid by a subsequent assignment with the assent of the company. *Eastman v. Ins. Co.*, 45 Maine, 307; *Ins. Co. v. Doll*, 35 Md. 89; May on Insurance [2 Ed.] sec. 382, p. 573. If it were true, as claimed by respondents, that the policy was assigned to Mrs. Froehly, in due form with the assent of the company and a full knowledge on its part of the true state of the title, it would not better her position; for, as assignee, she stands in the shoes of her assignor, and can recover only if he could. Her right is wholly derivative. As the policy was void as to him it was void as to her. *Bidwell v. Ins. Co.*, 40 Mo. 42, 46; *Archer v. Ins. Co.*, 43 Mo. 434, 442. Persons entering into a written or printed contract are bound to examine and ascertain its contents; and if they accept it without objection they are bound by its terms, in the absence of fraud or imposition. *Brown v. Railroad*, 18 Mo. App. 568; *Moore v. Henry*, 18 Mo. App. 35; *Rothschild v. Frensdorf*, 21 Mo. App. 318; *O'Bryan v. Kinney*, 74 Mo. 125; *Railroad v. Cleary*, 77 Mo. 634; *Ins. Co. v. Fletcher*, 117 U. S. 519, 31; *Ins. Co. v. Buffum*, 115 Mass. 343, 345; *Pindar v. Ins. Co.*, 47 N. Y. 114, 118. The indorsement of December 22, 1880,

"loss, if any, payable to Mrs. Mary Froehly as her interest may appear," has a well-defined meaning. It is an order for the proceeds in case Joseph Froehly sustains the loss insured against, leaving the relation of insurer and insured to continue unimpaired between the company and Joseph Froehly. *Griswold v. Ins. Co.*, 1 Mo. App. 97, 100; s. c., 70 Mo. 654; *Fogg v. Ins. Co.*, 10 Cush. 337, 346; May on Ins. [2 Ed.] sec. 378, p. 566; *Bates v. Ins. Co.*, 10 Wall. [U. S.] 33. The indorsement must be construed according to its legal effect. It is clear that the company made and intended to make no new contract of insurance. The insurer makes no other contract than that contained in the policy. *Tesson v. Ins. Co.*, 40 Mo. 33. By the charter every person insuring in the company becomes a member thereof, "and shall at all times be included and bound by the provisions of the act." The company is a mutual insurance company, the officers of which cannot waive an essential condition of insurance. There is a marked difference in this respect between a stock and a mutual company. May on Ins. [2 Ed.] secs. 146, 147, pp. 169, 70; *Mulrey v. Ins. Co.*, 4 Allen, 116, 118; *Hale v. Ins. Co.*, 6 Gray, 169; *Gibbs v. Ins. Co.*, 9 Daly, 203, 205; *Walsh v. Ins. Co.*, 30 Iowa, 134, 144.

*Fisher & Rowell*, for the respondents.

The transfer of the policy to Mary Froehly, made on the face of it by the secretary of defendant, was, under the circumstances as shown by the evidence, a good and valid transfer, and made the policy good to her, with the right to collect for the loss; was in fact a new contract of insurance and re-delivery of the policy. *Griswold v. Ins. Co.*, 1 Mo. App. 97; s. c., 70 Mo. 654; *Soloms v. Ins. Co.*, 3 Keys [N. Y.] 416; *Titus v. Ins. Co.*, 81 N. Y. 418; *Frost v. Ins. Co.* 5 Denio [N. Y.] 154; *Plinkington v. Ins. Co.*, 52 Mo. 181; Landers on Ins. 100, 103, and notes; *Ins. Co. v. Robinson*, 56 Penn. 267; *Ins. Co. v. Kittle*, 39 Mich. 51; *Gaus v. Ins. Co.*, 43 Wis. 110; *Hough v. Ins. Co.*, 22

Conn. 575 ; *Northrop v. Ins. Co.*, 47 Mo. 435 ; *Brecken-rdge v. Ins. Co.*, 87 Mo. 62. The court properly ruled out the alleged by-laws of defendant when offered in evidence. The assignment of the policy in suit by the consent of, in fact, by the defendant's proper officers, in writing "loss if any, payable to Mary Froehly," and passing the policy over to her, amounted to a contract of insurance between her and the company. The company thereby insured her in the amount of the policy on the property covered by it, and according to the terms of the policy. Such is the legal effect of such an assignment. And the assignee can sue in her or his name on the policy. *Griswold v. Ins. Co.*, 1 Mo. App. 97 ; s. c., 70 Mo. 654. And as the officers of the defendant were aware of the condition of the title at the time they made the assignment to Mary Froehly, and retained and made and collected assessments on the premium note afterwards, they will be held to have waived any defects then existing in the policy and are estopped from avoiding it now. *Northrop v. Ins. Co.*, 47 Mo. 435. The act of the defendants here amounted to an engagement on their part that they would retain the unearned premium and regard the policy as valid, and pay the loss, if any, to the parties designated. In this case, as we set out in our reply, the defendant's officers knew at the time of the assignment of the existence of the facts upon which they sought to avoid the policy. *Hayward v. Ins. Co.*, 52 Mo. 181 ; *Hough v. Ins. Co.*, 29 Conn. 10 ; *Pelkington v. Ins. Co.*, 55 Mo. 172.

ROMBAUER, P. J., delivered the opinion of the court.

The action is on a fire insurance policy issued by the defendant which is a mutual insurance company created by special statute. The policy sued on purports to insure Joseph Froehly in the sum of fifteen hundred dollars, against loss by fire on the following property, to-wit: On frame house A., twelve hundred dollars,

on frame house B., one hundred and fifty dollars, on frame stable, one hundred dollars, on store fixtures and shelving, fifty dollars.

The plaintiff Mary Froehly brings the suit as assignee of the policy, her husband Joseph being joined with her for conformity under the provisions of the practice act. The cause was tried before a jury who rendered a verdict for plaintiff in the sum of $1737.75, being total amount of insurance with interest.

The evidence adduced by the plaintiff, taken in connection with admissions contained in the pleadings, tended to show the following facts: The land whereon the buildings insured were situated was, at the date of the policy, the property of Mary Froehly; she held the legal title in fee-simple at that date, and continued to hold it until the date of the fire. Joseph Froehly had no title to the land, nor had he any insurable interest in the houses except such as resulted from the fact that they were built with his means, and that he was in possession as husband. In the written application for insurance which forms part of the policy, Froehly stated his title as being one in fee-simple, and signed and gave his premium note to the company for two hundred and twenty-five dollars, on which he paid at that date, March, 1879, $22.50, and on June 1, 1881, $33.75. In December, 1880, Froehly called at defendant's office and told its assistant secretary that the title to the land was always in his wife; that he had transferred whatever interest he had in the buildings to her, and wanted the policy to be transferred to her. The following indorsement was thereupon made on the policy by said assistant secretary: "St. Louis, Mo., December 22, 1880, loss if any, payable to Mrs. Mary Froehly, as her interest may appear." With this indorsement the policy was re-delivered to Joseph Froehly. The fire occurred March 19, 1884, and the property insured was totally lost.

As the principal defenses interposed depend on the proper construction to be given to certain provisions of defendant's charter, these provisions are set out in full.

The first section of the act provides that the corporators and their successors are incorporated for the purpose of insuring *their* respective dwelling-houses, stores, shops, and other buildings, household furniture and merchandise.

The second section provides : " All and every person who shall at any time become interested in said company, by insuring therein, and all their respective heirs, executors and assigns continuing to be insured therein, as hereinafter provided, shall be deemed and taken as members thereof for and during the time specified in their respective policies and no longer."

The fifth section provides : " The directors may extend the insurance of said company to every part of the United States on real and personal property within the same, with the exceptions and provisions hereinafter enacted.    Insurance shall be made in all cases upon the representation of the assured contained in his application therefor, and signed by him or them, their attorney or agent, which representation shall, in fairness and good faith, state all the material circumstances within his or their knowledge which affects the risk."

The eighth section provides : " Every member of the company shall be, and is hereby bound to pay his proportion of all losses and expenses happening or accruing in and to said company, and all buildings and other property, real or personal, insured by and with said company, together with all right, title and interest of the assured to the lands on which they stand shall be pledged to said company, and the said company shall have lien thereon against the assured during the continuance of his, her, or their policies, and said lien shall continue in force until all assessments made for losses and expenses shall be fully paid."

The ninth section provides : " That in all cases where real or personal property insured by said company shall become alienated by sale, or change in partnership or ownership, or otherwise, the policies issued thereon shall be void, and shall be surrendered to said company to be cancelled, and said company shall not

be liable for any loss or damage which may happen to any such property after such alienation as aforesaid, unless the policy issued thereon shall have been duly assigned or confirmed by the consent of the directors, to the actual owners thereof, previous to such loss or damage; and no policy issued by said company shall be deemed to have been duly assigned or confirmed unless the consent of the directors to such assignment or confirmation is rectified (*sic*) on such policy by the secretary of said company. In all cases of assignment as aforesaid, the purchaser shall sign the premium note and assume all liabilities on account of the policy so assigned, and shall be entitled to all the rights and privileges to which the original insured was entitled, and subject to under this act."

The fourteenth section provides: "Said company may make insurance for any term not less than one month nor more than six years, and for the convenience of shippers may issue open policies, as is usual in other insurance companies, and any policy of insurance issued by said company, signed by the president and countersigned by the secretary, if the premium of ten per centage is paid, shall be deemed solid (*sic*) and binding on said company in all cases wherein the assured has a title in fee-simple, unincumbered, to the buildings insured and to the land covered by the same, but if the insured have a lease estate therein, or if the premises be incumbered, the policy shall be void, unless the true title of the assured and incumbrances thereon be expressed in the application for insurance of the same."

Relying on these charter provisions, the defendant contends, first, that the policy was void in its inception, and could not be validated by subsequent assignment, or any subsequent act of the company or its officers. Second, that even if Joseph Froehly had at the date of the policy an insurable interest to which the policy attached, yet if he transferred it to Mary Froehly prior to December, 1880, the policy was avoided by alienation, and she could not recover, because the policy was never confirmed to her as provided by section 9, nor did she

ever sign the premium note, nor could she legally assume the liability of a member, being a married woman possessed of no separate estate.

The plaintiff, on the other hand, contends, if we understand the argument of her counsel correctly, first, that the policy was not void in its inception, but only voidable, and even if void became validated by defendant's consent to the assignment after full information concerning the state of the title. Second, that the assignment of the policy to the plaintiff in December, 1880, with defendant's consent, was, under the circumstances, a new contract of insurance, and the defendant is estopped, by the conduct of its officers, to question its validity.

From the instructions given and refused, it seems that the trial court adopted the views of the law contended for by the plaintiff.

In discussing the proposition thus contended for, it must be borne in mind that the defendant is a mutual insurance company created by public laws, and that it was powerless to make any contract except such as by charter grant express, or necessarily implied, it was authorized to make. The first section of the charter authorizes the corporation to insure *their* respective dwelling-houses, and the fourteenth section does not enlarge that power. The second section provides that each person insured shall be a member of the company. The eighth section reserves a lien to the company on the property insured. No construction of the charter can confer power on the company to insure one who by the act of insurance was incapable of becoming a member, and incapable of conferring on the company a lien on the property insured by the contract of insurance.

Now it stands conceded that, at the date of the application and policy, Joseph Froehly had no title whatever to the realty on which these buildings stood. He had an insurable interest in these buildings, because any interest, legal, equitable or contingent, is sufficient to satisfy that term, but he had no interest on which he could create a lien without the concurrence of his wife,

evidenced as required by law; and before he could, under the terms of defendant's charter, effect any valid insurance, it was essential that he should have such interest in the realty that the contract of insurance could create a lien thereon by its own force.

The term, *their respective dwelling-houses*, etc., when used in these charters, is well defined. In *Hannibal Sav. & Ins. Co. v. Pipe*, 43 Mo. 409, which was an action on a premium note, and where the first section of the company's charter was almost identical with the one under consideration, the supreme court said: " No other subject or purpose is specified in this section than insurance, and *insurance of the members of the corporation*, and unless the authority to insure the defendant is found elsewhere, the company has transcended its authority, and the note is void."

We must therefore hold that the policy was void in its inception, as far as the buildings are concerned, being a contract wholly *ultra vires* of the company. Using the language employed by SCOTT, J., in *Loehner v. The Home Mut. Ins. Co.*, 17 Mo. 256, we can only say, "the facts being as represented, they could not give the plaintiff a right of action on the policy in the teeth of the statute, and against the terms of the contract."

We have so far discussed the proposition independent of that proposition of the fourteenth section of the charter which authorizes the company to effect insurance "in all cases wherein the assured has a title in fee-simple, unincumbered, to the buildings insured and to the land covered by the same, but if the insured has a lease estate therein, or if the premises be incumbered, the policy shall be void unless the true title of the assured and incumbrances thereon be expressed in the application for insurance of the same." Conceding, as the plaintiff claims, that this section does not necessarily limit the defendant's power to the insurance of structures held in fee-simple or by lease, and yet no rational interpretation can be found which would not necessitate the disclosure of the true interest of the assured in the property, if such interest is not absolute.

Can any court hold that under these charter provisions, when the interest of the insured is a leasehold or is incumbered, and he fails so to state in his application, the policy is void, and yet, if his interest is merely possessory, without claim of title, and he falsely states it to be one in fee, the policy may be valid? Will any court hold that the mere omission of disclosing the true state of the title in the first event renders the policy void, and a misstatement of the title in the second event, even though it go to the essence of the contract, has no such effect?

There is no question of fraud or imposition on part of the company in this case. It is admitted that the plaintiff Joseph himself stated his title to be in fee-simple, and the only claim he advances is that he did so in ignorance of the meaning of the term. It is a rule of law that persons entering into a written contract are bound to examine and ascertain its contents, and that in the absence of fraud or imposition they are bound by its terms if they accept it without objection. *O'Bryan v. Kinney*, 74 Mo. 125; *St. Louis, K. C. & N. Ry. Co. v. Cleary*, 77 Mo. 634; *New York Life Ins. Co. v. Fletcher*, 117 U. S. 519; *Monitor Mut. F. Ins. Co. v. Buffum*, 115 Mass. 343.

It is apparent, therefore, that in any view of the conceded facts the policy was void when issued, as regards the buildings, even though it may have been originally valid as to the store fixtures, which we take to be personal property and which were separately valued. *Loehner v. Ins. Co.*, 17 Mo. 247; *Koontz v. Ins. Co.*, 42 Mo. 126. Being void when originally issued to the extent aforesaid, it must be evident that it could not be validated by a subsequent assignment even if the evidence were sufficient to show such assignment. The rights of the assignee are no greater than those of the assignor, and a policy void in its inception cannot be vitalized by a subsequent assignment. *Eastman v. Ins. Co.*, 45 Me. 307; *Citizen's Fire Ins. Co. v. Doll*, 35 Md. 89. It could not possibly have that effect where the original contract, as in this case, was *ultra vires*, and no

new contract was made in the manner in which alone the
company was legally capable to contract. The cases
cited by plaintiff's counsel on the subject of waiver and
estoppel can have no possible application, since the com-
pany could not do by waiver what it was powerless to
do by contract. Bigelow on Estoppel [4 Ed.] 530. We
are aware that the defense of *ultra vires* is looked upon
with disfavor by American courts when raised to invali-
date an executed contract, but the exception of cases
where the charter of the corporation specifies and there-
fore limits it to the business in which it may engage, and
by express terms or by fair implication invalidates cer-
tain transactions, has always been recognized in this
state. *St. Louis Drug Co. v. Robinson*, 81 Mo. 26, and
cas. cit. Any other holding would place members of the
corporation wholly at the mercy of their officers.
Beyond this, it seems to be settled in the leading com-
mercial states of the Union that officers of a mutual
insurance company cannot waive an essential condition
of insurance. *Mulrey v. Ins. Co.*, 4 Allen, 116 ; *Gibbs
v. Ins. Co.*, 9 Daly, 203.

The judgment is equally untenable if we seek to
found it on the theory that the act of defendant's offi-
cers in December, 1880, created a new contract of insur-
ance between the company and Mr. Froehly. That
theory is wholly unsupported by any evidence in the
case, nor is there any basis for it in law. If the testimony
of plaintiff Joseph is true, which we assume, he wanted
to have the policy transferred or assigned to his wife,
and the officers instead of making such assignment made
the loss payable to her, which is a different contract.
There is no evidence in the case that he either for him-
self or wife applied for new insurance in the only way
in which it could be done under the charter, or that the
officers of the company ever intended to make a contract
of new insurance in any way, much less in the only way
in which they could make such contract under the char-
ter, or that Mrs. Froehly legally ever could, under the
circumstances, become a member of the company. Under
the authority of *Mound City Mut. F. & M. Ins. Co. v.*

*Cowan*, 42 Mo. 381, that transaction could not have amounted to a contract of new insurance even if the plaintiff and the officers of the company had intended it to have that effect.

It must be clear, therefore, that in any view of the law and evidence any recovery for the loss caused by the destruction of the buildings was wholly unwarranted, and that on the admitted facts there can be no recovery in a suit upon the policy for that part of the loss.

In regard to the loss on shelving and fixtures, the policy, under the decisions above quoted, having attached, there might have been a recovery under the policy. To what extent such recovery is barred by subsequent alienation, or whether, notwithstanding such alienation, there can be a recovery under the views taken in *Griswold v. Ins. Co.*, 70 Mo. 654, either in the name of Joseph Froehly or in the name of his wife, we do not intend to decide. As the plaintiffs have a right to recover the consideration paid by them on a void contract, and a right to the return of the premium note, we shall remand the case for further proceedings so as to enable the parties to settle all controversies apt to arise out of the transaction in this proceeding.

Judgment reversed and cause remanded. All concur.