### JOHN HANCOCK MUT. LIFE INS. CO. v. HOUPT.

(Circuit Court, W. D. Pennsylvania. August 14, 1901.)

1. REFERENCE—FINDINGS OF MASTER—REVIEW.
    Findings of a master on matters of fact are not to be disturbed unless clearly in conflict with the weight of evidence.

2. LIFE POLICY—CANCELLATION—MATERIAL MISREPRESENTATIONS.
    Where a life policy provides that it shall be void if any of the statements in the application are untrue, and the applicant expressly warrants that all his statements are true, but the application contains material misrepresentations as to his health and as to the pendency of applications for insurance with other companies, etc., which misled the company, and induced the issuance of the policy, and which are apparently intended for that purpose, the company is entitled to have the policy canceled on bringing suit within the proper time, especially where, even if the misrepresentations are not intentional, the policy, when delivered, plainly discloses the untruthfulness of the representations.

3. SAME—KNOWLEDGE OF MEDICAL EXAMINER—EFFECT.
    The fact that the physician who makes the medical examination has knowledge of the untruthfulness of the representations will not affect the company's right to the cancellation of the policy, he not having any power to enter into a contract of insurance or to make a waiver.

4. SAME—INCONTESTABLE CLAUSE—EFFECT.
    A provision in a life policy that it is incontestable after two years cannot affect a suit by the company to obtain its cancellation, brought within three months from its date, the company's rights depending on the facts as existing at the filing of the bill.

In Equity.

E. N. Willard, for plaintiff.

J. B. Woodward, for defendant.

ACHESON, Circuit Judge.   This suit was commenced on October 21, 1898.   The bill is for the cancellation of a policy of insurance for $10,000, dated July 29, 1898, and on that day issued by the plaintiff to the defendant upon the life of the latter, on a written application dated July 15, 1898, made and signed by the defendant.   The policy recites that the insurance is made "in consideration of the representations and statements made in the application for this policy, which are referred to and made a part hereof," and stipulates that, "if any of the statements in the application for this policy are in any respect untrue, this policy shall become void, except as hereinafter agreed," and that the "policy shall be incontestable after two years from its date, except for nonpayment of premium, or military or naval service in time of war."   Accompanying the application were questions propounded by the medical examiner to the applicant, the latter's answers to the same, and the following stipulation thereunder, subscribed by the applicant:

"I hereby warrant that all the statements and answers made by me above are complete and true.   I agree that there shall be no contract of insurance until a policy shall have been issued and delivered, and the first premium thereon paid, while I am in good health; and, if said policy be issued, this application, with answers made to the medical examiner, shall be a part thereof."

A true copy of the questions by the medical examiner and the applicant's answers thereto were plainly printed and written on the reverse side of the policy as issued and delivered.   The ground for the cancellation of the policy alleged in the bill is that certain specified representations and statements made by the defendant in his said application and answers to the medical examiner, material to the risk, and upon the faith of which the policy was issued, were untrue, and were known by the applicant to be false when made.

After the cause was at issue, and at the instance of both parties, and in pursuance of a written stipulation signed by their counsel, the court referred the case to a master named by them.   The order appointing the master did not expressly define his powers, but throughout the proceedings before him both parties acted upon the theory that he was authorized to hear and decide all questions of fact and law, and each party requested the master to make findings of fact and law in accordance with propositions submitted by them respectively.   In the main, the findings of the master were in favor of the plaintiff, and he has recommended a decree in accordance with the prayers of the bill, canceling the policy in question.   The master found and has reported, among other things, that "the defendant was not fairly insurable, and this fact was known both to him and to the examining physician"; that "the application and medical examiner's report signed by the applicant contained misstatements calculated and intended to, and which did in fact, deceive and mislead the company's officers"; that, "had the questions of the application been truthfully or fairly answered, the policy would not have been issued"; and that on "October 11, 1898, promptly on discovery of the misrepresentations, and within three months from the date of the original application, plaintiff tendered the defendant the return

of the premium paid." Specifically answering certain of the plaintiff's requests, the master found thus:

"In his application the defendant stated as follows:

" 'The only insurance on my life is as follows: New England, $15.000; Northwestern, $10,000; Mutual Life, New York, $10,000; State Mutual, $20,000; Ætna, $10,000.' He further stated in his application as follows: 'I have never made an application to insure my life to any company nor agent upon which a policy has not been issued, nor is there one now pending, unless so stated above.' He further stated as follows, 'Have applied to State Mutual for $10,000 additional,' in his declaration to the medical examiner. Answer. I so find and report."

"That said answer [statement] was untrue, and at the time it was made, on July 15, 1898, the defendant had an application pending, which he made to the Phœnix Mutual Life Insurance Company of Hartford, Conn., for insurance on his life in the sum of $10,000 on June 29, 1898, which was received at the office of the Phœnix Mutual Life Insurance Company, in Hartford, Conn., on July 6, 1898, and rejected August 8, 1898. Answer. I so find and report. The date of rejection, however, was August 6th."

"That question 11a, put by the medical examiner in his question, was as follows: '(11a) Have you been obliged to consult a doctor at any time during the last ten years? If so, when, and for what?' To which the defendant answered, 'Pneumonia, 1½ years ago.' Answer. I so find and report."

"That said answer was false and misleading, and the defendant had consulted Dr. F. H. Bosworth, of New York, a specialist in throat diseases, in the month of April, 1897, and fr: m that time to October 1, 1898, for a disease of the throat which the doctor pronounced 'perichondritis of the cricoid cartilage of the larynx.' That he consulted Ernest U. Buckman and Dr. L. H. Taylor, both specialists in throat diseases, of the city of Wilkesbarre, Pa., for the same disease, from April, 1897, to November, 1898. That he was treated for throat disease by these physicians in the month of April, 1897, and every month thereafter until November, 1898, from two to ten times a month, and they treated him by sprays, applications to the throat, and by applying electricity to the throat externally. Answer. I so find and report."

"That the defendant was also asked by the medical examiner this question: '(11b) When, and for what, did you last consult a doctor?' To which the defendant answered: 'As above' (which above answer was 'pneumonia, 1½ years ago'). That said answer was false and misleading, as the uncontradicted evidence is that he consulted and was treated for disease of the throat by Drs. Bosworth, Taylor, and Buckman, from April, 1897, to November, 1898. Answer. I so find and report."

"That the defendant was also asked by the medical examiner this question: 'Are you now under a doctor's care? If so, for what?' To which the defendant answered, 'No,' which answer was false and misleading, according to the testimony of Drs. Bosworth, Taylor, and Buckman. Answer. I so find and report."

"That the thirteenth question put by the medical examiner to the defendant was as follows: 'Has any proposal or application to insure your life ever been made to any company or agent upon which a policy has not been issued, or is any now pending? If so, give full particulars.' To which the defendant answered, 'Have applied to State Mutual for $10,000 additional,' which answer was false, and there was an application by the defendant for a policy of $10,000 upon his life pending in the Phœnix Mutual Life Insurance Company of Hartford, Conn., dated June 29, 1898, received by the Phœnix Mutual on July 6, 1898, and rejected on August 8, 1898. Answer. I so find and report, except that the date of rejection was August 6th."

"Question 18 put by the medical examiner to the defendant was as follows: 'Have you ever had or been predisposed to any of the following diseases or infirmities? If so, state the full particulars, giving dates, severity,. duration, nature, and number of attacks.' Among the diseases then inquired about was this: 'Have you ever had or been predisposed to

disease of the throat?' To which the defendant answered, 'No, except pneumonia, above.' That said answer was false. Answer. I so find and report."

"That the plaintiff was induced to issue its policy, No. 56,098, insuring the defendant's life, by false declarations and representations made to it by the defendant as to the state of his health and medical attendance. Answer. I so find and report."

"That, had the defendant stated the truth in his application and in his answers to the questions put to him by the medical examiner as to his previous health and medical attendance, the policy would not have been issued. Answer. I so find and report."

"At the time M. B. Houpt made his application to the plaintiff he knew he had disease of the throat; he knew that he had consulted and been attended by Drs. Bosworth, Taylor, and Buckman, specialists in throat diseases, for diseases of the throat; and he knew that he had had illness and disease other than as stated by him in his application and in his answers to the questions put to him by the medical examiner. Answer. I so find and report."

"From April, 1897, to and including July 15, 1898, the defendant had perichondritis of the cricoid cartilage of the larynx. Answer. I so find and report."

"Perichondritis of the cricoid cartilage of the larynx is a disease of the throat, and tends to shorten life and increase the risk of loss in the matter of life insurance. Answer. I so find and report."

"The concealment of the fact by the defendant that he had consulted and been attended by Drs. Bosworth, Taylor, and Buckman for throat disease was the concealment of a fact material to the risk. Answer. I so find and report."

"The concealment of the fact by the defendant, on July 15, 1898, that he had an application pending in the Phœnix Mutual Life Insurance Company of Hartford, Conn., for a policy of $10,000, on his own life, was the concealment of a material fact. Answer. I so find and report."

"That under all the evidence in this case the answers of the defendant to the questions put to him by the medical examiner, Nos. 11 a, b, and c, 13, 18, and 19, were made with actual intent to deceive the plaintiff. Answer. From a careful consideration of the evidence, I believe this to be so. I so find and report."

"The policy, which the defendant read upon its delivery, contained this clause: 'No person except the president or secretary is authorized to make, alter, or discharge contracts, or waive forfeiture.' Answer. I so find and report."

To the report and findings of the master the defendant filed exceptions, and, accordingly, the cause came on for final hearing. The case, however, has been considered by the court as well on the pleadings and proofs as on the report of the master and the exceptions to his findings. Now, it is settled that the findings of a master upon matters of fact are not to be disturbed unless clearly in conflict with the weight of the evidence. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289. No such clear conflict is apparent here. Certainly there was evidence to sustain all the findings of fact here excepted to, and I am not convinced that the determinations of the master were against the weight of the evidence in any essential particular whatever.

In the brief of the defendant's counsel it is said:

"It is not denied that the application contained misrepresentations, and that the misrepresentations were material to the risk. It is strenuously denied, however, that they were made by the defendant with intent to deceive the plaintiff."

But, under the circumstances, and having regard to all the evidence, it is hard to acquit the defendant of positive bad faith. I cannot say that the master went too far in holding, as he has done, that the defendant actually intended to deceive the plaintiff.

It does not help the defendant's case that the medical examiner, who acted in this one instance, was informed or had knowledge of what the facts were. The medical examiner was not authorized to enter into a contract of insurance, or to make any waiver. The defendant well knew that his application and accompanying answers to the questions of the medical examiner were addressed to the insurance company, and were to be submitted to its officers as the basis of the proposed contract of insurance. He subscribed his application and the said answers, and must be taken to have known the contents thereof. He is not to be heard to assert the contrary under the circumstances of this case. Moreover, he expressly warranted the truth of his statements and answers as subscribed by him. Furthermore, aside from the warranty, his misrepresentations were most material, and, in fact, misled the plaintiff, and induced it to issue the policy. Still further, even if it could be believed that the defendant did not originally know what his answers stated, the policy, when delivered to him, plainly disclosed his untruthful answers, and he could not, in good faith to the plaintiff, hold the policy. Insurance Co. v. Fletcher, 117 U. S. 519, 534, 6 Sup. Ct. 837, 29 L. Ed. 934. Under the findings of fact by the master and the proofs, the defendant is without any solid ground upon which to place a defense to this bill.

A word as to the suggestion made by the defendant's counsel touching the effect of the clause providing that the policy shall be incontestable after two years from its date. That clause, and the authorities cited under this head, plainly have no application to this case. This suit is for cancellation of the policy, and was brought within two years—indeed, within three months—after its date. The suit proceeded upon the ground that there never was a valid contract of insurance, and that the policy was fraudulently obtained. Of course, the case is to be determined upon the facts as they existed at the date of the filing of the bill.

The exceptions to the master's report must be overruled, and his findings of fact confirmed. Let a decree be drawn in favor of the plaintiff in accordance with the recommendation of the master.