PREFERRED LIFE ASSUR. SOC. *v.* THOMPSON.

(Division B. May 28, 1934.)

[155 So. 188. No. 31239.]

Stovall & Stovall, of Okolona, and **Hill, Hill, Whiting, Thomas & Rives**, of Montgomery, Alabama, for appellant.

Patterson & Patterson, of Calhoun City, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The insured, Dr. F. E. Thompson, at the time of the application for the policy of insurance involved in this case, was suffering from chronic dilation of the heart due to valvular obstruction. He was well aware of this fact and that the disease was of such character that he was liable to die of it at any time, and he did die of the

disease a short time after the issuance of the policy. Only the day before the application he had been thoroughly examined by a physician, expert on this disorder, and had been informed of its exact nature and imminent danger. But in part 1 of his application for the insurance he stated over his signature that he was in good health and free from any and all diseases, ailments, or afflictions; and in part 2 of the application he stated, in apparent response to the question whether he had ever suffered from any injury, ailment, or disease, that he had suffered from influenza four days, results cured; and in part 3, being the medical examiner's report, it was stated that there was no evidence of any disease of the heart.

It was shown by the testimony that part 1 of the application was filled out by the soliciting agent of the insurance society, without any questions being asked by the agent, the agent having no knowledge or information to the contrary of the answers as written by the agent, and that parts 2 and 3 were filled out by the local medical examiner without any questions being asked by the medical examiner, but that the medical examiner knew that the answers as filled out by him were untrue. The medical examiner had treated the insured, knew of this heart trouble and of its extent, and that the disease was such as to render the applicant ineligible to an honest policy of insurance. The medical examiner admitted as a witness that he knew the answers filled in by him were untrue, knew of the disease and of its nature and effect, but excused himself by saying that he intended to write the insurance society a private and confidential report giving the real facts, but forgot to do so.

Our books are full of cases where the insured has in good faith made correct answers and representations to the agent of the insurance company and the agent has written out the answers in such way that the answers appear as false representations, and we have held that the insured may rely on the agent to write out the answers correctly, and the insured is not, in such a case,

bound by the incorrect answers when he signs the application without reading it over. And there are likewise numbers of cases holding that, where, in good faith, the insured has attempted to answer questions of the medical examiner, the company is bound to all the knowledge which the medical examiner actually has in respect to the facts covered by the answers, whether the answers are correct or not. And so long as the predicate of good faith and want of fraud on the part of the insured are present as an essential element, all these cases are sound in law and in morals. But the essential stated predicate is not present in this case.

The applicant was an experienced physician; he had been an examiner in life insurance applications; he knew that he was not entitled to insurance, and he knew that the medical examiner, here involved, knew that he was not an insurable risk—there was no reasonable latitude for a difference of opinion on that subject. He knew, and he knew that the medical examiner knew, that, if correct answers were given, the policy being applied for would not be issued. It follows inescapably that he anticipated and expected that the medical examiner would fill out the application with false answers as he did; in other words, that the medical examiner would act in his interest, and against that of the insurance society. To hold that in such a case the medical examiner is the agent of the insurer would be to overrun the reasons which support the general rule that the medical examiner is the agent of the insurer, and would open wide the door for the most monstrous frauds and swindles upon insurance companies.

We follow the reasoning applied in such cases as New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934, and Mutual Life Ins. Co. of New York v. Powell (C. C. A.), 217 F. 565, that a medical examiner cannot be an agent of the insurer for the designed purpose of defrauding the insurance society or company. An applicant cannot use a medical examiner as a means or

instrumentality, an accomplice, to consummate a swindle upon an insurance company to which fraud both the insured and the medical examiner are effectual parties, and then successfully stand upon the claim that the examiner was the agent of the company. In such a case the examiner is acting for, and is the creature of, the applicant, and not of the company.

Reversed and dismissed.