BRIDGET DIMICK v. THE METROPOLITAN LIFE INSURANCE COMPANY.

Argued November 12, 1901—Decided February 24, 1902.

1. A warranty by the applicant for an insurance policy, made part of the contract, is a condition precedent to liability of the insurer.

2. Actions of *assumpsit* are not excluded either from the privilege or the restriction of section 126 of the Practice act permitting general averment of performance of conditions precedent, and, in such case, prohibiting general denial of performance. *Gen. Stat., p.* 2554. That enactment applies to all actions. A plea of *non-assumpsit* will not sustain a defence of non-performance where the declaration contains such an averment.

3. On the trial of an issue of fact, if performance of conditions precedent be averred generally in a pleading in the cause, non-performance of any such condition, though appearing in evidence, will not be effectual, *per se*, to defeat the right asserted unless there be specified in the answering pleading an intention to contest its performance.

4. An amendment of pleading directed under the circumstances of this case and new trial ordered.

On rule to show cause.

The plaintiff declared, as in *assumpsit*, upon an unsealed policy of insurance issued December 4th, 1899, whereby the defendant agreed to pay $1,000, twenty years after date, to John W. Dimick, called the insured; and if, prior to that time and while the policy should be in force, he should die, then to pay that sum to Bridget Dimick, his wife, called the assured, if living; otherwise to the legal representatives of the insured. The death of John W. Dimick on January 24th, 1900, was alleged, and performance of all conditions precedent was averred. The plea was the general issue. The policy, which was fully set forth in the declaration, recited that it was issued "in consideration of the answers and statements contained in the printed and written application for this policy upon the life of John W. Dimick, * * * all of which answers and statements are hereby made warranties and are hereby made part of this contract" and of certain premiums to be paid; and the agreement to pay was made "subject to the conditions set forth on the reverse side hereof, each and all of which are hereby made part of this contract and are accepted by the insured and assured as part thereof as fully as if herein recited." One of the conditions on the reverse side of the policy was that "if any answer or statement in the application herein referred to is not true * * * this policy shall be void." Annexed was what purported to be a copy of the application referred to in the policy. The application proper, marked "A," contained many printed questions addressed to the person whose life was proposed for insurance, all on subjects plainly within the knowledge of anyone of whom they might be asked, and written answers to all but one of such questions. It was dated November 19th, 1899, and was signed by both John and Bridget Dimick. The question left unanswered was "Have you ever been a pensioner, or is an application for a pension pending or contemplated? (If granted, state cause in exact language of pension papers.)". In the original document, produced in evidence at the trial by the defendant, this answer to that question then appeared, viz.: "Yes, for long services

in the Civil war." Among the other questions were these: "State amount of insurance you now carry on your life, with name of company or association by whom granted, and the year of issue (enumerate each)," and "Is there any other insurance in force on your life?" The answer in each case was "None." In the medical examination following, marked "B," were many printed questions addressed to the person proposed for insurance on subjects chiefly relating to pathological history, and the written answers thereto. Inquiry was made as to whether such person had ever had any of a great number of diseases, among which was rheumatism, as to which the answer was "No." Another question, preceded by questions as to illness, was "Have you ever been an inmate of any asylum or hospital? If so, when and for what?" To which the answer was "No." To the question, "Have you ever had any personal injury?" the answer was "Yes." This paper, marked "B," was dated November 23d, 1899, and was signed by John W. Dimick and witnessed by Dr. Haring, the medical examiner of the company. The original was on the reverse side of the sheet on which was the paper marked "A," signed by Mr. and Mrs. Dimick, and was followed by the report of the medical examiner, the whole document being offered in evidence for the defendant.

At the trial the entire case for the plaintiff consisted of the policy and the proofs of death required by the policy and by it made evidence against the claimant thereunder. The date of death, as alleged, was admitted. In the proofs of death it was stated, in answer to questions, that the deceased had been an inmate of the Englewood hospital, under treatment for an accident from a runaway team, for two weeks, in November, 1894; and in answer to the question, "Did deceased carry any other insurance on his life? If yes, give name of company, amount and dates of policies," it was stated: "Yes, P. U. policy in Prudential, $219.00." The trial justice denied a motion to nonsuit the plaintiff made on the ground that there were misstatements in the application for insurance, because the defendant had not specified in its pleading nonperformance of any condition precedent.

For the defendant it was proved that in a sworn application to the United States government for a pension, made June 20th, 1896, the deceased had stated rheumatism as a disability—a previous application of November 30th, 1895, in which that disability was not stated, having been refused; and that, in a like application for an increase, made October 22d, 1896, rheumatism was stated as a disability. There was no other evidence that the deceased had ever had rheumatism, and Dr. Haring testified that a man might suppose a pain to be rheumatism that was not. The widow was called to prove that the deceased had a pension, and it was developed that there were arrears at the time of his death. It was further proved that on February 22d, 1897, there was issued to the deceased by the Prudential Insurance Company of America, in lieu of a lapsed endowment policy, a paid-up policy for $219, to be due on proof of his death before February 22d, 1916. It was further proved that the deceased had been an inmate of the Englewood Hospital, as stated in the proofs of death, except that the year was 1893. It appeared in evidence that the answers to the questions in the paper marked "A" were written by Harry Friedman, whose business was that of agent for the defendant, and those to the questions in the paper marked "B" were written by Dr. Haring, its medical examiner, and that in both cases some answers were written on the writer's own knowledge, without asking the question, and one answer in paper "B" was changed from the first writing. It appeared on cross-examination that Friedman knew of the paid-up policy in the Prudential company, and did not consider it as insurance in force; and that Dr. Haring, who had known the deceased for twenty years, had heard of his being in the Englewood Hospital at the time he was there, and that his report to the defendant, above quoted, was of the accident that sent him there. It incidentally appeared that there was considerable delay in effecting the insurance after paper "A" was signed, awaiting the production of the pension papers, which the applicant had said were lost or mislaid. The transaction finally proceeded without their production. The family physician of the deceased was a wit-

ness for the defendant, and testified that he was called in about a week before the death of Mr. Dimick, when he seemed to have a partial paralysis of one arm, and that later the patient fell in attempting to come downstairs and went into a comatose condition from apoplexy, and that death shortly ensued.

The trial justice, for the reason that he had denied the motion to nonsuit, denied a motion to direct a verdict in favor of the defendant made on the like ground. A motion to amend the plea was denied. The case was submitted to the jury solely on the honesty and candor of the deceased in making, in the application, the challenged statements, including those in the medical examination, and the jury was instructed that if the deceased acted as an honest, truthful and candid man in the negotiations with the defendant, ready to give it whatever information he had touching the matters regarding which it was inquiring, then the contract was binding on the defendant; otherwise it was not.

The verdict was in favor of the plaintiff.

Before Justices GARRISON, GUMMERE and COLLINS.

For the defendant, in favor of the rule, *Robert H. McCarter.*

For the plaintiff, *contra, Warren Dixon.*

The opinion of the court was delivered by

COLLINS, J. It appears from the foregoing recitals that this cause was submitted to the jury on the theory that it was necessary, under the pleadings, in order to defeat recovery, that the defendant should establish by a preponderance of evidence, that the alleged misstatements inducing the contract of insurance were fraudulent. One of the reasons assigned for a new trial is that on the question of fraud the verdict was against the clear weight of the evidence. This reason has not been sustained. The only subject as to which a plausible contention of fraud can be made is that of the plaintiff's having had rheumatism previous to the application for the

insurance. His statements, under oath, in his applications for pension; that he had that disease, if evidential of the fact, were not conclusive. There was no proof that he had really ever had it; although his family doctor and another physician who had known him many years were called as witnesses for the defendant. The jury was properly directed that their verdict should not be controlled by a belief that either the government or the insurance company—one or the other—had been defrauded. Their sole inquiry was whether fraud had been practiced on the company. In view of the self-evident fact, which also was proved, that a man may erroneously suppose that he has rheumatism, and the presumption against fraud that must always be indulged, it is within the bounds of probability that the insured in 1896 may have thought he had that disease and by 1899 have ascertained that such was not the case.

The other reasons assigned attack the ruling of the trial judge that under the pleadings, non-fraudulent misrepresentations were not available in defence although the answers and statements contained in the application for the policy were thereby made warranties.

The statute on which the refusal to nonsuit the plaintiff or to direct a verdict in favor of the defendant was based, is section 126 of the Practice act (*Gen. Stat., p.* 2554), which reads as follows: "The plaintiff or defendant in any action may aver performance of conditions precedent generally; and the opposite party shall not deny such averment generally, but shall specify in his pleading the condition precedent, the performance of which he intends to contest."

It is first contended for the defendant that warranties are not conditions. There is sometimes a distinction signified by the use of one or the other of those terms, for a warranty is often a merely collateral contract; but there is no such distinction within the purview of this statute as applied to policies of insurance. In *American Popular Life Insurance Co.* v. *Day,* 10 *Vroom* 89, in our court of last resort, warranties and conditions in such instruments are treated as synonymous terms, as indeed they are. In *Sonneborn* v. *Manufacturers' Insur-*

_ance Co.,_ 15 _Id._ 220, 222, it was declared in the same court that a promissory warranty had the nature of a condition precedent. That every inducing statement, made a warranty by a policy of life insurance, shall be true is plainly a condition precedent to the insurer's liability under such policy. In _Eddy St. Iron Foundry_ v. _Hampden, &c., Insurance Co.,_ 8 _Fed. Cas._ 300, Mr. Justice Clifford said that in the law of insurance "a warranty is a stipulation forming a part of the contract, and is construed as a condition," and in _Hearn_ v. _Equitable Safety Insurance Co.,_ 11 _Id._ 965, he reaffirmed that doctrine. In _National Bank_ v. _Insurance Co.,_ 95 _U. S._ 673, in the United States Supreme Court, Mr. Justice Harlan said that when warranted, the exact truth of statements in an application for insurance became a "condition precedent to any binding contract," and he repeated the expression in the case of _Moulor_ v. _American Life Insurance Co.,_ 111 _Id._ 335. The only case I have found denying that such a warranty is a condition precedent is _Redman_ v. _Aetna Insurance Co.,_ 49 _Wis._ 431, where considerable erudition is displayed, leading only to a misconception of the nature of the subject; but that case is only helpful to either party in the present controversy for its correct decision that under any system of pleading and in any style of action a breach of warranty must be _averred_ and proved by him who relies on such a breach. In the policy in suit, moreover, the warranties were in express terms made conditions.

It is next contended that cases like that before us are not within the statute, because it is performance by some one other than the plaintiff—that is, by the insured—that is involved. It is assumed that, in the case of _Vreeland_ v. _Beekman,_ 7 _Vroom_ 1, the effect of the statute is limited to conditions to be performed by a party. The Chief Justice did say: "The object of this provision seems to be to facilitate the pleading by relieving the plaintiff from the burthen of a circumstantial statement of _his_ performance of conditions precedent," &c.; but the case then in hand happened to be one where the condition was for the plaintiff himself to perform, and the expression was addressed to that case. That a definite interpretation was not undertaken is evident from the fact

that the statute includes defendants in the relation in which the Chief Justice mentions only a plaintiff. The mischief remedied by the act inhered in all cases where performance by any person of the condition precedent to a party's right was essential, and the language adopted to effectuate this remedy was comprehensive in the highest degree.

It is next contended that the statute does not apply in actions of *assumpsit.* We have recently held that the *privilege* conferred does so apply. *Vail* v. *Pennsylvania Fire Insurance Co.;, ante p.* 66, and the earlier case of *Hecht* v. *Taubel,* 26 *Vroom* 421, is inferentially to the same effect. The *restriction* is equally applicable. It was observed in *Vail* v. *Pennsylvania Fire Insurance Co., ubi supra,* that the statute not only dispenses with former rigor in declaring a right, but also imposes a burden on him who disputes its assertion. As was said in *Vreeland* v. *Beekman, ubi supra,* "a new rule, with respect to this subject, has been established," and the words employed embrace all forms of action. In *Supreme Assembly* v. *McDonald,* 30 *Id.* 248, and in *Ottawa Tribe, &c.,* v. *Munter,* 31 *Id.* 459, the Court of Errors and Appeals assumed the applicability of the restriction in actions that inspection of the records will show were framed in *assumpsit.* The reports of those decisions, however, do not disclose the form of action, and I can well understand how a case cited to us as authority for the defendant's contention may have led the pleader to the belief that the general issue would embrace the strict defence attempted to be made in this case. The case so cited is *Dewees* v. *Manhattan Fire Insurance Co.,* 5 *Id.* 244. It arose on a motion to strike out certain special pleas to a declaration on a fire insurance policy, the averments of which are not stated in the report. The pleas were sustained, but, incidentally, it was said (at *p.* 253) that the policy not being under seal, and the action being an action of *assumpsit,* the defendant might, under the general issue, have availed itself of all the defences made by the pleas. The statute now *sub judice,* then already in force, was not adverted to. Whether this was because it was not then in mind, or because the plaintiff

had not, by his declaration, invoked it, is immaterial. Where the statute is invoked, by the general averment permitted, the *dictum* referred to is not correct.

It is suggested that even if performance of condition precedent be averred generally, and the opposite party fail to specify in his pleading the condition performance of which he intends to contest, still, if it in fact appears in evidence that such a condition has not been performed, the non-performance must be given effect. We cannot assent to this view. In such a case it is not needful to meet or explain any testimony on the subject except where it may properly be admissible on some issue within the pleadings; as, in the trial under review, the issue of fraudulent misrepresentation, not required to be specially pleaded. Non-performance will not be effectual, *per se,* to defeat the right asserted. In the Munter case, above cited, non-performance did in fact appear, but was given no effect.

The statute clearly applies to the pleadings in this case, and it was rightly held that under them the defendant could not defend upon a non-fraudulent misstatement inducing the contract. *Franklin Fire Insurance Co.* v. *Martin,* 11 *Vroom* 568, 573; *Vivar* v. *Knights of Pythias,* 23 *Id.* 455, 467. My brethren, however, are of opinion that, because of the declaration on the subject of pleading made in *Dewees* v. *Manhattan Fire Insurance Co., ubi supra,* relief should be awarded by permitting the amendment denied at the trial, and affording a new trial on the issue that the defendant unquestionably meant to raise by its plea, and such will be the order of the court.

In the preface to this opinion are recited four matters as to which misstatements are alleged. Two of them were in the paper marked "A," signed by both applicants for the insurance, and two of them in the paper marked "B," which was the medical examination of the person proposed to be insured. In this court it must be ruled that such a medical examination may be so referred to in an application for insurance as to become a part of it. *Glutting* v. *Metropolitan Insurance Co.,* 21 *Vroom* 287; *Finn* v. *Metropolitan Insurance Co., ante*

*p.* 17.   We will not prejudge the question of whether or not in this case a reference effectual for that purpose was made, nor must it be assumed that, as to any or either of the four matters suggested, there was misstatement.

1. *As to pension.*  We incline to think that the defendant must be bound by the copy of the application annexed to the policy it issued.   In that the question as to pension has no answer.   If we take the application as in evidence and assume that the answer now appearing was written before the document was signed, we find the answer incomplete.   No act of congress authorizes a pension for "long services in the Civil war."   Both parties to the contract must be presumed to have known the law.   It is plain that Mr. Dimick was not stating the cause, but the occasion of his pension.   It is impossible that anyone representing the insurer could have supposed that he was using the exact language of the pension papers.   If a fuller answer was required it should have been demanded.   In case of an omission to answer, or of an imperfect answer to a direct question put to an applicant for insurance, the issue of a policy is a waiver of an answer or of imperfection therein. *Phœnix Life Insurance Co.* v. *Raddin,* 120 *U. S.* 183 ; *Carson* v. *Jersey City Insurance Co.,* 14 *Vroom* 300 ; *affirmed,* 15 *Id.* 210.   It is a fair presumption that the defendant could have procured the information, if desired, from the pension office, for it had no difficulty in producing the original papers at the trial.

2. *As to other insurance "carried" or "in force."*  The two forms of expression indicate a distinction in the mind of the inquirer.   As the learned trial justice suggested to the jury, we carry burdens not benefits.   No one can say that because Mr. Dimick had a paid-up policy that he was carrying other insurance.   Perhaps the paid-up policy, though strictly a fixed obligation, payable according to its terms, without conditions, might fairly be called "insurance in force," but that question, also, we will not prejudge.

3. *As to rheumatism.*  Nothing need be added to what has been said on this subject, except that, even if the answer to the medical examiner is to be considered as within the applica-

tion for insurance, and, therefore, as a warranty, to be tested by fact and not merely by intent, the burden of proof of falsity is on the defendant, and the plaintiff will not be concluded by inconsistent statements of the insured.

4. *As to hospital inmacy.* Whether the challenged answer was or was not warranted, the inquiry will be as to the meaning of the question. The word "hospital" itself is ambiguous, and not every stay in any hospital would be within the scope of the interrogation. Resort to context and circumstances will be necessary in order to enable a jury to pass upon any issue that may be framed on this point.

The rule to show cause will be made absolute, and an order may be entered permitting the defendant to file a plea that shall specify the condition, precedent performance of which it intends to contest; but limited to the four subjects above mentioned as to which untrue answers or misstatements are claimed to have been made in the application for insurance.