32   329
36   344

COLLINS, RESPONDENT, v. METROPOLITAN LIFE IN-
SURANCE COMPANY, APPELLANT.

(No. 2,084.)

(Submitted March 22, 1905.  Decided April 20, 1905.)

*Life Insurance—Warranties—Breach—Premiums—Default—
Waiver—Agents—Authority—Evidence—Interpretation of
Words.*

Life Insurance—Assured "Connected" with Sale of Liquors—Forfeiture.
1.  Where, in an action to recover the amount of an insurance
policy, it appeared that the assured had represented in his applica-
tion for the policy that he was not in any way connected with the
manufacture or sale of spirituous liquors, the word "connected" must
be presumed to have been used in its popular sense (section 2209, Civil
Code), involving the idea of permanency; so that proof that assured
occasionally waited on the customers of a saloon-keeper, for the
latter's accommodation and without compensation—the assured hav-
ing no interest whatever in the saloon—did not establish such con-
nection with the business as to make his negative statement in the
application a misrepresentation which would work a forfeiture of
the policy.

Life Insurance—Materiality of Representations Claimed to be False.
2.  *Obiter:* The materiality of representations, made by the assured
in an application for a life insurance policy, claimed by the insurer
to be false, and the question whether the applicant acted in good faith,
are of no importance—they being determined by the stipulations in the
contract, and their truth or falsity made determinative of the rights
of the parties.

Life Insurance—Acts of Agent—Liability of Insurer.
3.  *Obiter:* Where, by the terms of a life insurance policy, the state-
ments contained in the application are made a part of it as conditions
precedent, and the assurer assumes the risk only on the faith that
they are true, the latter does not become liable where the agent or
solicitor knows that the representations made are not true, when
under the terms of the contract he has no authority to waive any
requirement in this regard made by the principal.

Life Insurance—Premiums—Nonpayment—Waiver.
4.  Where a life insurance policy provided that any forfeiture for
nonpayment of a premium could be waived only by a writing signed
by an officer of the insurance company, an agreement between the
assured and the company's local agent that quarterly premiums due
on the 6th of certain months could be paid as late as the 22d of such
months, was not within the apparent scope of the agent's authority
and therefore not binding on the company.

Insurance—Contents of Policy—Presumptions.
5.  The assured is presumed to know, and it is his duty to read, the
contents of a policy and all conditions and limitations therein con-
tained.

Insurance—Acts of Agent—Ratification—Presumptions.
6.  Under a contract of insurance which provided that none of its conditions could be varied or modified by an agent except by agreement in writing signed by an officer of the insurance company, the assured is presumed to know that any engagements he may enter into with the agent are not binding upon the company unless brought home to and ratified by it.

Life Insurance—Retention of Premium—Ratification—Presumptions.
7.  By retaining a premium paid on a life insurance policy two days after it was due, an insurance company is conclusively presumed to have ratified the act of its local agent in receiving it and to have waived a forfeiture of the policy for a noncompliance with its provisions in this regard.

Insurance—Agents—Misrepresentations—Ratification.
8.  A misrepresentation by the local agent of an insurance company to it as to the date of payment of a premium, prevented any ratification of the agent's act in receiving it and any waiver by the company.

Life Insurance—Nonpayment of Premiums—Waiver—Estoppel.
9.  Premiums on a life insurance policy were payable quarterly on the 6th days of August, November, February and May.  The policy provided that it should be void on assured's failure to pay premiums as provided, and that forfeiture could only be waived or premiums in arrears received, by agreement in writing signed by an officer of the company.  The insurer received and retained one premium paid two days after being due.  *Held*, that by this single act of waiver the company did not estop itself to insist on a forfeiture when payment was made sixteen days after due date thereof, which payment was tendered back but refused.

Insurance—Forfeitures—Waiver—Evidence.
10.  The fact that an insurance company waived forfeitures of policies held by other persons is of no evidentiary value, where it is not shown that the holder of the policy in controversy knew of such waivers and that his conduct was influenced by such knowledge.

Life Insurance—Premiums Past Due—Assured *in Extremis*—Concealment.
11.  In an action to recover the amount of a life insurance policy, the concealment from the insurer of the fact that the assured was already *in extremis* when a premium past due was offered in payment, was fraudulent, fair dealing requiring that the assured apprise the company of his condition, so that it might intelligently exercise its option in the premises.

Life Insurance—"Connected" with Sale of Liquors—Evidence.
12.  Where, in an action on a life insurance policy, the insurer claimed a breach of warranty that assured was not connected with the sale of spirituous liquors, evidence that the latter received no consideration for an occasional service rendered to a saloon-keeper at the bar, was of some materiality as tending to show the exact relation of the assured to the business.

*Appeal from District Court, Lewis and Clark County; Henry C. Smith, Judge.*

ACTION by John W. Collins against the Metropolitan Life Insurance Company to recover the amount of an insurance

policy.   From a judgment for plaintiff and an order denying it
a new trial, defendant appeals.   Reversed.

STATEMENT OF THE CASE, BY THE JUSTICE DELIVERING THE
OPINION.

The Metropolitan Life Insurance Company of New York on
August 6, 1902, issued to August Erickson, of the city of
Helena, Montana, a policy of insurance on his life for $1,000;
the consideration being the payment on or before the delivery
of the policy of a premium of $35.06, and the promise to pay
a like sum on the 6th of February and August of each year
during the continuance of the policy.   The assured could not
meet the first payment on the date named in the policy, and
requested Mr. Thompson, the agent of the company in Helena,
who held the policy for delivery, to arrange with the company
so that he could pay quarterly instead of semi-annually.   The
arrangement was effected, and the assent of the company was
given in writing that the premiums might be paid in install-
ments of $17.88 each on the 6th days of August, November,
February, and May in each year.   In the meantime the first
quarterly payment had been made, and the policy delivered.
This took place on August 21, 1902.   In his application to the
company he made certain representations concerning his health,
occupation, etc., concluding with a declaration warranting them
to be true, and agreeing that they should be made the basis of
any contract between him and the company, and that, if any
of his statements proved to be untrue, the policy issued to him
should be void, and all moneys paid thereon should be forfeited
to the company.   He further agreed that, inasmuch as only
the officers at the home office in the city of New York had au-
thority to determine whether a policy should issue upon any
application, and as they acted only on the written statements,
etc., contained in the application, no statements, promises, or
information made or given by or to the person soliciting or
taking the application, or by or to any other person, should be
binding upon the company or in any way affect its rights, un-

less such statements, promises or information should be reduced to writing and presented to the officers of the company at the home office. This application, signed by the applicant, was forwarded to the home office, and upon it the policy was issued and delivered, as heretofore stated. It recited that it had been issued in consideration of the answers and statements contained in the application, a copy of which was annexed to and made a part thereof, and also of the premiums paid and to be paid.

Among the statements contained in the application were the following: "(2) My occupation is proprietor of a restaurant, and I have no other occupation except * * * (8) I am not in any way connected with the manufacture or sale of ale, wine or liquor." Among the conditions stated in the policy are the following: "Second. If any statement in the application herein referred to is not true, or if any premium of installment of premium be not paid when due, this policy shall be void. * * * Eighth. The contract between the parties hereto is completely set forth in this policy and the application therefor taken together, and none of its terms can be varied or modified, nor any forfeiture waived or premiums in arrears received except by agreement in writing signed by either the president, vice-president, secretary or assistant secretary, whose authority for this purpose will not be delegated; no other person has or will be given authority." The assured died on June 3, 1903. Soon thereafter the plaintiff was appointed his executor. The policy provides that proof of death shall be made to the home office in the manner and to the extent required by blanks furnished by the company, etc. The plaintiff made seasonable demand upon the company for the necessary blanks, but they were refused. Thereupon this action was brought.

The issues presented at the trial and agitated on the motion for a new trial were whether the policy had been forfeited (1) by reason of false representations of the assured as to his occupation, and his connection with the sale of malt, vinous or alcoholic liquors; and (2) by his failure to pay premiums at

the times specified, or whether his failure to do so had been waived by the defendant.   The plaintiff had verdict and judgment.   The defendant has appealed to this court from the judgment and an order denying it a new trial.

*Mr. E. A. Carleton,* for Respondent.

The agent knew full well the connection, such as it was, that defendant had with the sale of liquors.   Knowledge affecting the rights of the insured which comes to the agent of the insurance company, while he is performing the duties of his agency in procuring applications for insurance, and delivering policies, and collecting premiums, becomes the knowledge of the company, and, if the latter afterward collects premiums of such parties, it waives all objection with regard to the matters of which it has such knowledge.   (May on Insurance, sec. 132; *McGurk* v. *Metropolitan L. Ins. Co.,* 56 Conn. 528, 16· Atl. 263; *Insurance Co.* v. *Wolff,* 95 U. S. 326.)   Contracts of insurance are always construed most liberally in favor of the insured.   (May on Insurance, 2d ed., secs. 175, 178; *Holter L. Co.* v. *Fireman's F. Ins. Co.,* 18 Mont. 287, 45 Pac. 207.)   So odious are forfeitures regarded by the law that the party relying on one must establish a clear case.

General agents have power to extend the time for the payment of premiums, although the policy expressly denies them such authority.   (*O'Brien* v. *Mutual Life Ins. Co.,* 22 Fed. 586; *Standard etc. Ins. Co.* v. *Friedenthal,* 1 Colo. App. 5, 27 Pac. 88; *Putnam* v. *Insurance Co.,* 4 Fed. 753; *Ball etc. Co.* v. *Aurora Ins. Co.,* 20 Fed. 232; *Joliffe* v. *Madison etc. Ins. Co.,* 39 Wis. 117, 20 Am. Rep. 35; *Terry* v. *Provident Life Ins. Co.,* 13 Ind. App. 1, 55 Am. St. Rep. 217, 41 N. E. 18; *Young* v. *Hartford Fire Ins. Co.,* 45 Iowa, 377, 24 Am. Rep. 784; *Boehen* v. *Williamsburg etc. Ins. Co.,* 35 N. Y. 131, 90 Am. Dec. 787; *Dayton Ins. Co.* v. *Kelly,* 24 Ohio St. 345, 15 . Am. Rep. 612; *Elkins* v. *Susquehanna etc. Ins. Co.,* 113 Pa. St. 386, 6 Atl. 224; *Pino* v. *Merchants' etc. Ins. Co.,* 19 La. Ann. 214, 92 Am. Dec. 529; *Universal Fire Ins. Co.* v. *Block,* 109

Pa. St. 535, 1 Atl. 523; *Lebanon Ins. Co.* v. *Hoover,* 113 Pa. St. 591, 57 Am. Rep. 511, 8 Atl. 163; *Cleaver* v. *Traders' Ins. Co.,* 71 Mich. 414, 15 Am. St. Rep. 275, 39 N. W. 571, and note; *Dial* v. *Valley etc. Assn. etc.,* 29 S. C. 560, 8 S. E. 227, and note; *American Cent. Ins. Co.* v. *Sweetser,* 116 Ind. 370, 19 N. E. 159; *Jennings* v. *Metropolitan etc. Ins. Co.,* 147 Mass. 61, 18 N. E. 601, and cases cited, particularly, *Knickerbocker L. Ins. Co.* v. *Norton,* 96 U. S. 234; *McGurk* v. *Metropolitan L. Ins. Co., supra; Lamberton* v. *Connecticut Fire Ins. Co.,* 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222.)

"Limitations of the authority of officers to agree to any extension of premiums does not prevent the company being bound by an extension made by an actually authorized agent, and the stipulation against waiver or modification of terms, except in writing, does not prevent the waiver implied by law from conduct amounting to an estoppel. The right to insist on forfeiture may be waived by acceptance of overdue premiums, or by the custom to do so." (2 Current Law Review, April, 1904, No. 2, pp. 495, 496; *Washington Life Ins. Co.* v. *Berwald* (Tex. Civ. App.), 72 S. W. 436.)

Acceptance of overdue premiums waives forfeiture. (*Bennet* v. *Union Cent. L. Ins. Co.,* 203 Ill. 439, 67 N. E. 971.) Where a company accepted such premiums, it is estopped from asserting lack of authority on the part of the agent to extend time for payment, although the policy expressly provides against modifications except in a formal manner. (*Union Cent. Life Ins. Co.* v. *Whetzel,* 29 Ind. App. 658, 65 N. E. 15.) The custom or promise of an agent is sufficient to estop the company (*Continental Ins. Co.* v. *Browning,* 114 Ky. 183, 70 S. W. 660); and where the course of dealing of the company has been such as to induce insured to believe that it will not be insisted on, the company is estopped from claiming forfeiture. (*Illinois Life Assn.* v. *Wells,* 102 Ill. App. 514; *Aetna Life Ins. Co.* v. *Fallow, supra; Illinois Life Assn.* v. *Wells,* 200 Ill. 445, 65 N. E. 1072; *Westchester F. Ins. Co.* v. *Earle,* 33 Mich. 143; *Winans* v. *Allemania Ins. Co.,* 38 Wis.

342; *Young* v. *Hartford Fire Ins. Co.,* 45 Iowa, 377, 24 Am. Rep. 784.)    If there is a waiver of the time of payment, the amount due is not required to be paid or even tendered prior to the death of the insured, and the health certificate cannot be required since the policy does not lapse.    (Current Law Review, *supra,* 495; *Illinois Life Assn.* v. *Wells, supra; Aetna Life Ins. Co.* v. *Sanford,* 200 Ill. 126, 65 N. E. 661; *Spoeri* v. *Massachusetts Life Ins. Co.,* 39 Fed. 752; *Bingler* v. *Mutual Ben. L. Ins. Co.,* 10 Kan. App. 6, 61 Pac. 673.)    Such is the rule in the supreme court of the United States.    (*Hartford Life etc. Co.* v. *Unsell,* 144 U. S. 439, 12 Sup. Ct. 671; *Phoenix etc. Ins. Co.* v. *Doster,* 106 U. S. 30, 1 Sup. Ct. 18.)

*Messrs. Carpenter, Day & Carpenter,* for Appellant.

The conditions of the application for insurance in the policy were such as to make the answers to the questions in the application warranties.    Where by the terms of a policy answers to the questions in the application are made warranties, the validity of the policy depends upon the literal truth of the answers.    It is not a question whether they are material to the risk or not.    (*Metropolitan Life Ins. Co.* v. *Rutherford,* 98 Va. 195, 35 S. E. 361; *Graham* v. *Fireman's Ins. Co.,* 87 N. Y. 69, 41 Am. Rep. 348; *Jeffrey* v. *United Order of Golden Cross,* 97 Me. 176, 53 Atl. 1102; *Dimick* v. *Metropolitan Life Ins. Co.,* 69 N. J. L. 384, 55 Atl. 291; *Standard Life etc. Ins. Co.* v. *Sale,* 121 Fed. 664.)    The materiality of the representation is not a question for the jury.    (*Aetna Life Ins. Co.* v. *France,* 91 U. S. 510, 23 L. Ed. 401.)    A number of cases can be found where the question of the materiality of the representation was submitted to the jury, but they arose under policies that did not make the representations warranties. (*High Court Independent Order of Foresters* v. *Schweitzer,* 171 Ill. 325, 49 N. E. 506; *McGurk* v. *Metropolitan Life Ins. Co.,* 56 Conn. 528, 16 Atl. 263, 1 L. R. A. 563; *Standard Life etc. Ins. Co.* v. *Fraser,* 76 Fed. 705.)

It was no excuse for this misrepresentation that the agent knew of it, since by the terms of the application he had no authority to waive it.    (*New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, 29 L. Ed. 934, 6 Sup. Ct. 837.)    Nor was it material that the decedent did not receive pay for his services. It was the fact of the rendition of the service that made the representation false.

Where the policy provides a method for waiving its express terms, that waiver can only be accomplished by the act or conduct of one or more of the officers named in the policy as those authorized to waive its terms.    (*Northern Assur. Co.* v. *Grand View Bldg. Assn.*, 183 U. S. 308, 22 Sup. Ct. 133; *Modern Woodmen of America* v. *Tevis*, 111 Fed. 113.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

While several errors are assigned as grounds for the reversal of the judgment and order, the principal question submitted for decision is that of forfeiture.    It was presented upon a motion for nonsuit and specifications of the insufficiency of the evidence to sustain the verdict.    It is contended by the defendant that the evidence is conclusive on this question in its favor on both the grounds urged in the trial court.

1. The evidence bearing on the question of forfeiture for material misrepresentations to induce the issuance of the policy is the following: The assured was a restaurant-keeper.    The room in which he conducted his business was divided by a partition set at a right angle to its length, and pierced by an archway, allowing free passage from the front to the rear.    In the front part of the room was a saloon kept by one Nelson.    The rear portion of the building was fitted up with a kitchen, dining-room, etc.    Entrance was gained to the restaurant by means of a side door going through the kitchen, or through the saloon by means of the archway.    Nelson boarded with the assured. Sometimes while Nelson was taking his meals, and in order to accommodate him, the assured would wait on customers at the

bar, going to Nelson to secure change when necessary, but not using the cash till or register. At times, also, when Nelson was called out temporarily during the day, the same accommodation was extended by the assured. The latter had no interest in the saloon in any way, and such occasional service as he thus rendered to Nelson was without compensation. At the time when Thompson, the agent of the defendant company, took the application for the policy, he and one Roberts, a solicitor employed by him, were invited by the assured to drink, and did so, he serving them. At that time Thompson asked him if he had any connection with the saloon. He replied: "Only as you see. When Nelson is away, if anybody comes in, I generally wait on them."

Do these facts show that the assured made false statements as to his connection with the manufacture and sale of spirituous liquors, within the meaning of his declaration contained in the application? It is certainly clear that the assured had no other occupation (that is, no other vocation, calling, employment, trade or business) than conducting the restaurant, for all the witnesses who had knowledge of his business testified to this effect. That was the business from which he obtained his livelihood, and to which he devoted his time and attention. His statement as to his occupation was therefore literally true.

The word "connected," in its popular sense—and in this sense it must be presumed to have been used here (section 2209, Civil Code), for there is no ground to think that it was used in any other sense—means joined to, connected or closely associated with, conveying the idea of more or less permanency. This idea is associated with the expressions "connected by blood," "connected in business," "connected by rail or water," and the like, involving the idea of something more than a casual or accidental association or union. In this sense we think it was intended to be used by the parties here. Otherwise the single accommodation extended to Nelson at the time the application was written—such as when the assured invited

Thompson and his solicitor to drink with him, and he himself served them—would have to be construed as such a connection with the particular business as to work a forfeiture of the policy, if not stated. Thompson evidently understood such connection as he observed between the assured and the business of Nelson not to be substantial or permanent in the sense in which the word "connected" is ordinarily used. Thompson's understanding of the term, while not conclusive upon the company, is illustrative of the sense in which it was intended to be employed. If this be the correct interpretation of the term, then such incidental or occasional service of the assured in tending that bar was not such connection with the business as to make his negative statement in the application a misrepresentation. The evident purpose of requiring the declaration in the application was to inform the company exactly as to the business connections of the applicant, so that it, through its agents, could determine whether or not the risk was a suitable one. From this point of view—and we think it the proper one—the statement was true, and the contention of the defendant cannot be sustained.

Counsel cite many authorities in support of their contention —among them, the following: *Metropolitan Life Ins. Co.* v. *Rutherford,* 98 Va. 195, 35 S. E. 361; *Graham* v. *Insurance Co.,* 87 N. Y. 69, 41 Am. Rep. 348; *Jeffrey* v. *United Order of the Golden Cross,* 97 Me. 176, 53 Atl. 1102; *Dimick* v. *Metropolitan Life Ins. Co.,* 67 N. J. L. 367, 51 Atl. 692, 55 Atl. 291, 62 L. R. A. 774; *Aetna Life Ins. Co.* v. *France et al.,* 91 U. S. 510, 23 L. Ed. 401; *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934. These cases undoubtedly sustain the view that it makes no difference whether the particular representation is material to the risk or not, or whether the applicant acts in good faith. The question of materiality is settled and determined by the stipulations of the contract, and their truth or falsity made determinative of the rights of the parties. They do not, however, sustain the view contended for by the defendant.

The case of *Insurance Co. v. Rutherford* involved a warranty by the assured touching the cause of the death of his father. In the application the cause given was cholera morbus. In the proof of death the cause given was fistula. The court held that, it having been made to appear that the statement made in the application was false, the policy was avoided.

In *Graham* v. *Insurance Co.,* two policies of fire insurance were issued upon application of the agent of the plaintiff, who made false representations as to the ownership of the property insured. These representations were held to avoid the policy, since by the terms of the contract they were made material.

In *Jeffrey* v. *United Order of the Golden Cross,* the truth of the representations of the assured as to her previous condition of health was by the terms of the policy made a condition precedent to the liability of the company. She stated in the application, among other things, that she had suffered from dyspepsia, in light form, previous to the date of the application, but that her health was then good, whereas it appeared from the evidence that she had for twenty years been suffering from chronic dyspepsia and other ailments, which continued up to the date of the application. This representation, being false, was held sufficient to avoid the policy.

So the other cases cited all support the general rule that where, by the terms of the policy, the statements contained in the application are made a part of it, as conditions precedent, and the insurer assumes the risk only on the faith that they are true, the insurer does not become liable unless the representations are literally true. In each of the cases cited the representation was an unequivocal false statement in direct reply to the question propounded to the applicant.

Nor does it make any difference that the agent or solicitor knows that the representations are not true, since, under the terms of the contract, he has no authority to waive any requirement in this regard made by his principal. (*New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934.)

In this case we have seen that the applicant stated the truth about his occupation. So, also, he did as to his connection with the sale of intoxicating liquors, under a proper construction of the term "connected," as used in the application; for an occasional or gratuitous service by way of accommodation to another in his business may not be construed into an engagement in the pursuit of such business. Such a construction would be excessively technical, and not in accordance with the meaning of the term in its ordinary, popular sense.

2. The contention that the policy was forfeited by the failure of the assured to pay the premiums according to its terms must be sustained. The facts shown by the evidence are that, within a few days after the policy was remitted to Thompson, he went to the restaurant of the assured to deliver it and to collect the first premium. The assured told him that he did not have the money, and would not have it until the 20th or 21st of the month. He further said that he could not pay the premiums semi-annually, and desired Thompson to arrange for him with the company so that he could pay quarterly on the 20th or 21st of the month, his reason being that his customers were railroad men, and, as their pay-day came on the 20th and 21st, his collections were made at that time, and it would be more convenient for him. Thompson agreed to arrange for the quarterly payments. At the same time he told the assured that he could pay on the 20th, 21st or 22d, or, as some of the testimony tends to show, at any time before the 30th. Upon the delivery of the policy on the 21st, one-half of the semi-annual premium was accepted. On August 29th permission was granted by the company, in writing signed by its secretary, to pay the premiums quarterly, but the 6th days of August, November, February and May were fixed as the dates of payment, thus indicating either that Thompson did not report to the company the proposed change in date of payment, or that the company was not willing to grant this further departure from the terms of the policy as already written. Thereafter, according to the receipts of payment to Thompson

introduced in evidence, and his statements accompanying his remittances to the company, payments of premiums were made as follows: November 8, 1902; February 6, 1903; May 22, 1903.   According to the testimony of Roberts, the solicitor, the payment of February 6, 1903, was actually made on the 22d of the month.

The insured became ill in May, 1903, and was taken to a hospital.   The plaintiff, being a personal friend, went to the office of the agent, Thompson, on May 22d, and paid the premium due on the 6th to a clerk—Thompson being absent—and obtained the receipt.   He did this at the request of the assured, but said nothing to the clerk in Thompson's office of the illness of the assured.   On the 25th Thompson, having discovered the facts, and presumably at the instance of the company, tendered to the plaintiff, for the assured, the amount of the premium so paid.   It was not accepted.   There is no evidence in the record that the written consent of the defendant was obtained that the premiums might be paid at times other than those fixed in the written permission of the company to pay on the dates named therein.

It is conceded by the respondent that, under the terms of the written contract, the premiums should have been paid at the time specified, and that a failure in this respect would ordinarily avoid the policy.   The contention is made, however, that the evidence shows that Thompson, the agent, perimtted the payments of November, 1902, and February, 1903, to be made at later dates, and that this fact, coupled with the fact that he agreed that any and all payments might be made as late at least as the 22d of the designated months, showed a waiver of this condition, so that the company could not repudiate the payment made on May 22d, and thus avoid the policy.   This contention involves the assumption that the acts and engagements of Thompson were within the apparent scope of his authority, and therefore binding upon the company, or that, if such be not the case, the knowledge of his acts was brought

home to the company, and a course of dealing thus permitted by the company which estopped it to deny its liability.

That the acts and engagements of Thompson were not within the apparent scope of his authority is clear. The eighth condition of the policy is an express limitation upon the authority of the agent. It declares that "the contract between the parties hereto is completely set forth in this policy and the application therefor taken together, and none of its terms can be varied or modified, nor any forfeiture waived or premiums in arrears received except by agreement in writing signed by either the president, vice-president, secretary or assistant secretary, whose authority for this purpose will not be delegated; no other person has or will be given authority." It limits the authority of the agent to the taking of applications, the delivery of policies, the collection of premiums, and other matters of like nature, and to this limitation the assured gave his assent. He knew of it at the time he accepted the policy, or, what is the same thing, the conclusive presumption is that he knew. Such being the case, he knew that any engagement he entered into with Thompson was not binding on the company unless it was brought to its knowledge and ratified by it. It was his duty to read the policy and all the conditions and limitations it contained, and, if he did not do so, the omission was his own fault, and the loss, if any, must fall on him. He could not be permitted to enter deliberately into the contract, and then, after disregarding its plain conditions, be heard to say that the other contracting party was nevertheless bound. In such case the knowledge of the agent cannot be imputed to the principal so as to bind it, for the obvious reason that the particular act or declaration in controversy is known by the party dealing with him to be beyond the scope of his authority. The opposite view would render nugatory and destroy the very precaution taken by the principal to prevent the agent from departing from the strict terms of the contract without authority granted, as in the contract provided, and would result in a substitution of a different contract for the one made by the parties. The

following authorities fully support this view: *Knickerbocker Life Ins. Co.* v. *Norton,* 96 U. S. 234, 24 L. Ed. 689; *Insurance Co.* v. *Wolff,* 95 U. S. 326, 24 L. Ed. 387; *Northern Assurance Co.* v. *Grand View Bldg. Assn.,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; *Allen* v. *German-American Ins. Co.,* 123 N. Y. 6, 25 N. E. 309; *Quinlan* v. *Providence Wash. Ins. Co.,* 133 N. Y. 356, 28 Am. St. Rep. 645, 31 N. E. 31; *Modern Woodmen of America* v. *Tevis,* 117 Fed. 369, 54 C. C. A. 293; 1 Current Law Review, 50, and notes; *Dewees* v. *Manhattan Ins. Co.,* 35 N. J. L. 366; *Assurance Co.* v. *Norwood,* 57 Kan. 610, 47 Pac. 529; *Kyte* v. *Assurance Co.,* 144 Mass. 43, 10 N. E. 518.   See notes to *Smith* v. *Niagara Fire Ins. Co.,* 60 Vt. 682, 6 Am. Rep. 144, 15 Atl. 353, 1 L. R. A. 216, and *Lamberton* v. *Connecticut Fire Ins. Co.,* 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222.

In *Northern Assur. Co.* v. *Grand View Bldg. Assn., supra,* the United States supreme court, after an extensive review of the authorities, both state and federal, touching the authority of insurance agents, expressed its views as follows: "That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; that provisions contained in fire insurance policies that such a policy shall be void and of no effect if other insurance is placed on the property in other companies without the knowledge and consent of the company are usual and reasonable; that it is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by indorsement upon the policy or by other writing; that it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the

policies as executed and delivered; that where fire insurance policies contain provisions whereby agents may, by writing indorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by nonobservance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that, where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent." These conclusions were stated after a consideration of the conditions contained in a fire insurance policy, but they apply with equal force to any species of contract.

The company not being presumed to have knowledge of the engagements and conduct of the agent, do the facts tend to show that it ratified them, or that after notice it pursued such a course toward the assured that it estopped iself? The first payment was made on the delivery of the policy. This was a condition precedent to the validity of the policy. The payment in November was made on the 8th, two days after it was due. It was so reported to the company. By retaining this premium the company is conclusively presumed to have ratified the act of the agent, and to have waived the forfeiture. The only knowledge the company had of the date of the next payment, so far as the evidence tends to show, was that it was made on February 6th, the agreed date. The last payment was made sixteen days after it was due, but was tendered back, and the act of the agent in receiving it repudiated. It seems significant that, though the third payment was in fact not made until it was overdue, the company was informed that it was made

when due. From this fact the inference might be drawn that this misrepresentation was made because the agent understood that the company would not waive another forfeiture. But be this as it may, it was a misrepresentation which prevented any ratification or waiver by the company. There was then but the single act of waiver by the company in November upon which the plaintiff bases his claim of estoppel. This is not sufficient to sustain it.

Nor is the fact, incidentally shown in the evidence, that the company waived forfeitures of policies held by other persons, of evidentiary value, it not being shown that the holder of this policy knew of such waivers, and that his conduct was influenced by such knowledge. Under the circumstances, fair dealing also required that the assured inform the company of his condition at the time the last payment was made. For it was entitled to know the facts, so that it might intelligently exercise its option, for, the forfeiture having already occurred, the concealment of the fact that the assured was probably already *in extremis* was fraudulent. (*Globe Mutual Ins. Co.* v. *Wolff,* 95 U. S. 326, 24 L. Ed. 387.)

3. No complaint is made that the court erred in admitting or excluding evidence, except with reference to that showing that the assured received no compensation for his occasional service at Nelson's bar. Objection was made that this was immaterial. We think it was of some materiality, as tending to show the exact relation of the assured to the business.

Some criticism is made of the instructions submitted to the jury. It is not necessary to notice them, since what has already been said is sufficient to guide the court in further proceedings in the case.

The judgment and order are reversed, and the district court is directed to grant a new trial.

*Reversed and remanded.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.

ON MOTION FOR REHEARING.

(Submitted May 15, 1905.    Decided May 29, 1905.)

*Petition for Rehearing—When Proper to be Presented—When not.*

> A petition for rehearing should be presented only in those cases where reasonably good grounds therefor exist, and this should appear on the face of the petition. The court should not be asked to reconsider matters which have been considered and determined, especially where its view is conceded by counsel to be supported by authority.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Of the several grounds contained in the petition for a rehearing submitted herein only one requires notice. It is said by counsel that the conclusion reached is in direct conflict with the decision in *Wright* v. *Fire Ins. Co.,* 12 Mont. 474, 31 Pac. 87, 19 L. R. A. 211, and that this decision should be followed or distinctly overruled. This contention is based upon a misconception of what was decided in the case of *Wright* v. *Insurance Co.,* for it is clearly distinguishable from the case at bar. In that case a policy of a fire insurance had been effected by a general agent of the company after a personal examination of the risk. No written application was made by the assured, nor did the policy contain a stipulation limiting the powers of the agent. It did contain a stipulation that, "if the property be a stock of merchandise, and the same, or any part thereof, be or become mortgaged," the policy should be void, unless consent in writing by the company should be indorsed upon it. A portion of the risk consisted of a stock of merchandise upon which was a mortgage at the time the insurance was effected. Specific amounts were placed upon the separate classes of property insured. The defense made by the company was that the contract was avoided by the fact that the assured did not reveal the existence of the mortgage to the company and have its consent thereto indorsed upon the policy. This court, in reversing a judgment in favor of the defendant, laid down two propositions: First, that the policy

was not avoided as a whole by the fact that it covered a class of property falling within the prohibition, even though void as to such prohibited class; and, second, that, since the policy had been issued after personal examination by the agent, without any inquiry touching the existence of the mortgage, which was on the public records, and no representations had been made by the assured, who paid the premiums and accepted the policy without knowledge of the provisions therein touching the mortgage or mortgages already or thereafter to be effected upon the property, the company should be held to have consented to assume the risk, though encumbered by the mortgage, as effectually as if the provision had been complied with. It is not argued that the first proposition has any application to this case. The second is founded upon the principle that the agent acted generally for the company, and that having satisfied himself by personal inquiry and examination of the character and condition of the risk and recommended the issuance of the policy, his knowledge should be imputed to the company, and that the contract should be upheld, though consent to the mortgage was not formally indorsed upon it. The company issued the policy upon the knowledge acquired through its agent acting within the apparent scope of his authority, and, the circumstances being such that he knew, or should have known, of the existence of the mortgage, his knowledge should be imputed to the company. Had the policy been issued upon false representations made by the assured, or had the mortgage been subsequently put upon the property, then questions would have arisen analogous to those decided in the case at bar; and the analogy would have been more striking had the authority of the agent been expressly limited by the terms of the contract made by the parties. In this case the agent acted under limited authority, and the exact extent of his power touching the waiver of forfeitures was known to the assured and agreed to by him; and, while a forfeiture could have been waived in other ways than that provided for in the contract, yet we do not think the evidence is sufficient to show that such waiver was

made in this case. There is, then, no conflict between the conclusion reached here and the second proposition decided in *Wright* v. *Fire Insurance Co.*

Counsel, in his brief, in support of his petition for a rehearing, has seen fit to present again, and urge upon the attention of the court, the argument presented by him at the hearing touching the matter of forfeiture for failure to pay premiums. While conceding that the conclusion reached by the court is supported by abundant authority, he insists that such is the importance of the decision that the court should re-examine the whole question, and change the conclusion stated. If counsel had carefully studied the opinion of the court in connection with the decision in *Wright* v. *Insurance Co., supra,* he would not have ventured to trouble the court by presenting this question again. The rule allows parties to apply for a rehearing in proper cases, but a petition for a rehearing should be presented only in those cases where reasonably good grounds therefor exist, and this should be made to appear upon the face of the petition. If this court has committed error, or overlooked some matter of importance in deciding a case, as shown by the record and opinion itself, the petition should be confined to the presentation of these matters. The court should not be asked to reconsider matters which have been already considered and determined, especially where counsel concede that the view of the court is supported by authority. (*Big Blackfoot Milling Co.* v. *Blue Bird Min. Co.,* 19 Mont. 454, 48 Pac. 778.) The petition is denied.

*Denied.*

Mr. JUSTICE HOLLOWAY concurs.

Mr. JUSTICE MILBURN: I concur in the conclusion and in the opinion except as to what is said in regard to the *Wright Case.* As to it I do not express any opinion.