## HILL v. PHILADELPHIA LIFE INS. CO.

Circuit Court of Appeals, Fourth Circuit.
October 15, 1929.

No. 2874.

John M. Robinson, of Charlotte, N. C. (C. A. Cochran, of Charlotte, N. C., on the brief), for appellant.

Edward J. Boughton, of Philadelphia, Pa. (J. C. M. Vann, of Monroe, N. C., on the brief), for appellee.

Before NORTHCOTT, Circuit Judge, and GRONER and SOPER, District Judges.

SOPER, District Judge. An action at law was brought below by the beneficiary of a life insurance policy which contained a provision that the payment of an installment of a premium would not maintain the policy in force beyond the date when the next installment should become payable, and that the failure to pay any premium or note when due would forfeit the policy. A note of the insured for part of the second annual premium was overdue and owing when the insured died, but the evidence showed that, before the note was due, an agent of the company agreed with the beneficiary to extend the time for payment of the note to a date subsequent to the death of the insured. This agent, however, was not one of certain named executive officers, to wit, the president, vice president, secretary, treasurer, actuary, or comptroller, to whom the power to extend the time for paying a premium or to accept any note in payment thereof was expressly restricted by the provisions of the policy. The District Judge, being therefore of the opinion that the agreement for the extension of the note was invalid, directed a verdict for the defendant. The question for decision is whether, by reason of the agent's agreement and other evidence presently to be discussed, the company was estopped to deny the agent's authority, or had waived the right to insist upon a forfeiture of the policy.

On July 26, 1926, the company insured the life of M. Lomax Hill in the sum of $5,000, payable upon his death to his wife for an annual premium of $167.65. On or about September 2, 1926, the policy was delivered to the insured, who paid $25 in cash on account of the first premium and executed two promissory notes dated September 2, 1926, one for the sum of $70, payable 30 days from date, and the other for the sum of $72.65, payable 60 days from date. The notes were made payable to the order of the Gordon Insurance & Investment Company located at Monroe, N. C., which was the manager of the southeastern department of the insurance company. The policy called for the payment of the first premium in advance, as the insured knew, and the taking of the notes was a matter of personal accommodation, which enabled the agent, W. S. Pemberton, who sold the policy, and his superior, C. Y. Coley, a supervisor of agents, to pay the premium in cash to the company. Neither the company nor its manager in this territory had knowledge that the first premium was not paid in cash.

The notes were paid on December 1, 1926, and across the face thereof Coley wrote that they were paid in full.

The second annual premium became due on July 26, 1927. Under the terms of the policy, a period of 30 days' grace was allowed. On August 26, 1927, the insured paid $50 cash on account of the premium to W. E. Brown, cashier of the manager of the southeastern department of the company, and at the same time delivered to Brown, in order to secure an extension for the payment of the balance of the premium, two promissory notes, each for the sum of $52.17, one payable on October 26, 1927, and the other payable on January 26, 1928. The latter contained the following recitals and agreements:

"This note is given and accepted in part payment of the premium due on above date, on my Policy No. 90479.

"It is understood and agreed to by me that, if this note is not paid at its maturity, or at the expiration of any period to which it shall have been extended, no days of grace being allowed for the payment thereof, the said Insurance Contract No. 90479 shall lapse, and all further liability of said Philadelphia Life Insurance Co. on account of said Contract shall immediately cease and determine, subject to the privileges and provisions therein stated, and that the money which has been paid on account of the premium or premiums, for the balance of which this note is given, shall be forfeited to the Company. No personal liability accrues under this note and in event of nonpayment the sole remedies of the Company shall be as stated herein.

"M. Lomax Hill.

"No. 90479 Due Jan. 26, 1928.

"The company is authorized to insert number of policy."

On October 25, 1927, the insured paid Brown $52 on account of the first note, and the company received and retained this amount, but the second note was not paid on January 26, 1928, when it was due. The beneficiary testified that about the middle of January, 1928, she saw Coley, and stated that she was unable at that time to pay the second note, and inquired whether he would hold the note until the 1st of March, which he agreed to do. In the interval, to wit, on February 24, 1928, the insured died, and the company refused to pay the insurance on the ground that the policy had been forfeited by the failure to pay the premium note when due.

C. Y. Coley, with whom the beneficiary

made the agreement to extend the note, was not one of the executive officers of the company named in the policy. He was an employee of the Gordon Insurance & Investment Company, the above-named manager of the southeastern department of the company. He had the supervision of from four to eight insurance agents, covering the territory of Charlotte, Concord, and Gastonia, N. C., and had charge of the manager's office at Charlotte. He had authority to canvass insurance applications. His other duties and activities were described by Pemberton, who testified that he reported to the Charlotte office every day where he saw Coley, and that he was acquainted with the routine of the office during the period from July to October, 1926. Coley supervised the agents, received and delivered policies, collected premiums, and answered the correspondence of the company. It was the custom in this territory for the insured to give notes in part payment of premiums subsequent to the first premium. Coley would receive these notes from the insured in the first instance and send them to the manager at Monroe. Some fifteen days before the notes became due, they were returned to Coley for collection. Whenever possible, he would collect the cash, but, if he could not get the cash, he would usually accept renewal notes. Sometimes he would accept payment of the premium notes after they were due and would make remittances to the manager. In such cases he would not allow an indulgence for so long a period as two or three months, but would give two or three days, instructing the policyholder in each instance to date his check as of the date the note was due. Pemberton was unable to give the name of any particular case in which Coley had extended the time for the payment of a premium. At a former trial he testified that he had no personal knowledge of such extensions, but he explained in the instant case that he meant he could not recall a specific case. Nevertheless he had seen Coley give the indulgences.

There is no evidence that either the beneficiary or the company had knowledge that the agents accepted promissory notes instead of cash in payment of the first premium due under the policy. This circumstance, therefore, does not in any way support the plaintiff's case. It does not tend to make out either an estoppel or a waiver on the part of the company, for it is clear that the company neither authorized nor ratified the acceptance of the initial premium notes by the agent, and that the conduct of the beneficiary was in no way influenced thereby.

Furthermore, there is no evidence that the beneficiary had any knowledge of the custom of policyholders to give notes in part payment of premiums or of the indulgences granted by Coley, as described in the testimony of Pemberton. Consequently there is no ground for the application of the doctrine of estoppel in this case. It is true that there was evidence of an agreement between the beneficiary and the agent for the extension of the time for payment of the second note delivered to the company in part payment of the second premium; but since the contract of insurance expressly provided that such an agent as Coley did not have authority to grant such an extension, the beneficiary cannot claim that she was misled by his promise or that the company was estopped from denying his authority. The policyholder and his representative, in this case, the beneficiary, are, of course, chargeable with notice of the contents of the policy. Northern Assur. Co. v. Bldg. Assn., 183 U. S. 308, 362, 363, 22 S. Ct. 133, 46 L. Ed. 213; New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 530, 6 S. Ct. 837, 29 L. Ed. 934; Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140. The situation under these circumstances is well summed up by the court in Collins v. Metropolitan Life Ins. Co., 32 Mont. 329, 342, 80 P. 609, 612, 108 Am. St. Rep. 578:

"In such case the knowledge of the agent cannot be imputed to the principal so as to bind it, for the obvious reason that the particular act or declaration in controversy is known by the party dealing with him to be beyond the scope of his authority. The opposite view would render nugatory and destroy the very precaution taken by the principal to prevent the agent from departing from the strict terms of the contract without authority granted, as in the contract provided, and would result in a substitution of a different contract for the one made by the parties."

See, also, Foscue v. Insurance Co., 196 N. C. 139, 144 S. E. 689.

The more important contention of the beneficiary is that the company waived the forfeiture provisions of the policy. Adopting the language of the Supreme Court in Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234, 239, 24 L. Ed. 689, it may be said of the case at bar:

"The material question in this case is, whether, in view of the express provi-

sions of the policy, the evidence introduced by the assured was relevant and competent to show that the company had authorized its agent to grant indulgence as to the time of paying the premium notes, and waive the forfeiture incurred by their nonpayment at maturity."

That case held that, if a policy expressly provides that a failure to pay premium notes at maturity will bring about a forfeiture of the policy, which the agents of the company are not authorized to waive, the company at its option may either insist upon a compliance with the terms of the contract or, if it sees fit, may waive the condition or stipulation in its favor. It was also held in effect that evidence of the company's practice in allowing a local agent to extend the time for the payment of premiums and premium notes is admissible as denoting an authority actually conferred from which a jury may find that such agent had been authorized in fact to make such extensions.

There is no direct testimony in the instant case of the grant of power to Coley. His authority to extend the time for payment of the premium note and to waive the forfeiture of the policy must be found, if found at all, by inference from the course of conduct which he customarily pursued. There is precedent for thus establishing the authority of a corporate agent. It was held in Jackson Realty Co. v. Lehman, 83 N. J. Eq. 636, 92 A. 374, that the authority of an agent of a corporation to do certain acts in behalf of his principal may be inferred from the continuance of the acts themselves over such a period of time, and the doing of them in such a manner that the principal would naturally have become cognizant of them and would have forbidden them, if unauthorized. See, also, Dierkes v. Hauxhurst Land Co., 80 N. J. Law, 369, 79 A. 361, 34 L. R. A. (N. S.) 693; Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061; Fayles v. National Ins. Co., 49 Mo. 380; Conover v. Insurance Co., 1 N. Y. 290; Alabama Fuel & Iron Co. v. Rice, 187 Ala. 458, 65 So. 402.

Does the testimony of Pemberton justify the inference of authority conferred? The company contends with much force that the contract of insurance provides a method by which the time for the payment of a premium may be extended or a note in payment thereof may be accepted,

and declares that no person, except the named executive officers of the company, shall have power to do these acts. It is pointed out that it is consistent with Pemberton's testimony to suppose that the extensions and indulgences granted by Coley to other policyholders may have been made with the express authority of one or another of these executives, and that therefore the evidence does not show that the company waived the restrictions upon the power of its other agents. Moreover, Coley's instructions to policyholders to antedate their checks given in payment of premium notes after maturity indicates that he desired to conceal from the company that he was overstepping the boundaries of his authority.

We are impressed with the weight of these considerations, and it may be that they would prevail if supported by evidence on behalf of the company demonstrating that in fact the company had not authorized or acquiesced in the exercise of the power by its agent. But a verdict was directed for the defendant at the conclusion of the plaintiff's case, and it seems to us that in the present state of the record the argument goes to the weight rather than to the sufficiency of the evidence, and that the case should have been submitted to the jury to determine whether authority to waive the provisions of the policy had actually been conferred. It is clear that policyholders were frequently permitted to make part settlement of premiums due by giving their promissory notes. This was done in the case at bar when the cashier accepted the notes of the insured in part payment of the second premium. The recitals and agreements annexed to these notes, which have been set out above, indicate that the document was executed upon a form prepared by the company for such contingencies. In addition to these established facts, there is the direct testimony of Pemberton that notes were customarily used by policyholders in part payment of premiums subsequent to the first. It would seem that such notes were accepted by Coley as a matter of course in payment of premiums, were sent by him in the regular course of business to the manager of the southeastern department of the company at Monroe, and were returned to Coley for collection fifteen days before their maturity. Coley's practice in making collections upon these notes is also significant. He collected cash whenever he was able, but ofttimes accepted renewal notes in place of

cash or extended the time for payment of the notes for a few days. It does not appear that, when he exercised the discretion to grant indulgences, he had received prior authority from any superior officer in the company's employ. We think it may be fairly inferred from these circumstances, as the record now stands, that the company was cognizant of its agent's acts, that it was aware that he was extending the time for the payment of premiums without the authority of a superior executive officer, and that it acquiesced in his course of dealing.

The judgment of the District Court is reversed, and the case remanded for new trial.

Reversed.